First degree rape; sentence, thirty years' imprisonment.
During the early morning hours of September 6, 1980, appellant forced his way into the locked townhouse of the prosecutrix, located in Forestdale in Jefferson County, made his way to her upstairs bedroom, and raped her.
The prosecutrix stated that her assailant was a lean and muscular black male. The assailant repeated several times, "Keep your eyes closed." By complying, the prosecutrix did not see him and, thus, could not identify him by sight. However, throughout the ordeal, the assailant spoke in a very distinct soft voice and used no colloquialisms. The assailant used several phrases such as, "I know you, you know me."; "I won't hurt you if you keep quiet," and "do not open your eyes." He also inquired as to whether she had anything under her pillow. After raping her, the assailant rummaged through the prosecutrix' purse and took some money.
About six weeks later, the prosecutrix was called to the Birmingham City Jail to listen to the voices of several black men. She submitted the following phrases for the participants to recite: "Keep your eyes closed" and "I've been wanting this for a long time." Several other women were present for the same purpose as the prosecutrix. At one time the women were together but were separated shortly thereafter. They listened to the voices and made their identifications separately. The prosecutrix was not told that one of the participants was a suspect, nor did she know that appellant was in the lineup. The prosecutrix did not view the participants. Rather, she merely listened to their voices.
The prosecutrix immediately picked appellant as her assailant. She stated that "when the person spoke that had raped me [appellant] I knew immediately that was the right voice." The prosecutrix stated that she had had his voice in her "head" since the incident and when she heard appellant's voice, it matched with what she had been listening to in her "head" every night since the rape. She identified appellant's *Page 805 
voice from her recollection of what she had heard on September 6 and on the way appellant spoke the phrases she had provided.
 I
Appellant's only issue on appeal concerns the trial court's denial of his pre-trial motion to suppress evidence of prior similar crimes. The State offered the testimony to show the identity of appellant.
A pre-trial hearing was held and the prosecutrix gave the same testimony as that recounted above. In addition, the State called three other victims of rapes, which occurred in May, July, and August, respectively. However at trial, only the testimony of the July and August prosecutrixes was offered. At trial, their testimony was identical to that offered at the hearing on appellant's motion.
The July prosecutrix testified that during the early morning hours of July 18, 1980, she was awakened in her apartment by the presence of a black male who grabbed her from behind. The bedroom of her third floor apartment was dark and, thus, she could not see her attacker. The assailant repeatedly said, "Do not scream or I'll cut your throat." The prosecutrix stated that the assailant had a knife. He asked her several times what was under her pillow to which the July prosecutrix replied, "Nothing." Her assailant told her not to make any noise and do exactly as he said. He then raped her. After a short period of time he raped her again. Afterwards, he told her several times that "I [appellant] know who you are and I know where you work." He went through her purse looking for money. About twenty minutes after breaking in, the assailant left.
About three or four months later, the July prosecutrix was called to attend a voice identification lineup at the Birmingham City Jail. She stated that she was placed in a room with other women and asked to submit phrases for the lineup participants to say. While together, the women did not discuss their assailant's tone of voice or enunciation of words, or phrases to submit. Further, there was no mention of the details of their separate incidents.
The July prosecutrix listened to about four lineup participants before she identified appellant as her assailant. No other victim was present. She stated that appellant had a very soft voice and manner of speaking with a clear rhythm and enunciation of words. She stated that her identification of appellant was based on how he said the submitted phrases. The July prosecutrix testified that she had no doubt about her identification and although the several phrases submitted were similar "what difference did it make what he said, really; when he opened his mouth I knew it was him [appellant]."
The August prosecutrix testified that on August 25, 1980, she lived alone in an apartment in Birmingham. During the early morning hours, she was awakened by a black man holding a pillow over her head saying, "If you say anything I'll kill you." He repeatedly stated that "he knew me and if I looked at him he would kill me." The assailant pressed something on her head which she thought was a gun. The August prosecutrix never saw the face of her assailant. She described the assailant's voice as a light, "soft-speaking voice." The assailant stayed in the ground level apartment for about fifteen minutes before leaving. The August prosecutrix stated that nothing was taken. A broken kitchen window was found to be the point of entry. It was examined by the police for fingerprints. At trial, it was proved that a latent fingerprint removed from the broken window was made by appellant.
The August prosecutrix attended a lineup held at the Birmingham City Jail but did not listen to any of the participants' voices. She stated that she had not compared her recollection of the assailant's voice with that of the other victims.
Jefferson County Sheriff's Department Sgt. Linn Moore testified that he investigated the instant offense. He had the prosecutrix listen to the voices of six black males. He stated that each had similar *Page 806 
height and weight characteristics. Moore stated that although he did not use their voices as a criterion for selection, the voices of the participants were similar. He made each participant read in a soft voice the pre-selected phrases submitted by the various victims. Moore stated that each victim who participated listened to the lineup separately.
The May prosecutrix testified that around 5:00 a.m. on May 18, 1980, she was awakened in her bedroom of her second floor apartment by a black male with his hand over her mouth. The assailant repeatedly told her not to scream as he had a knife. He also stated that he knew her son was in another bedroom and would hurt him if she screamed. The assailant placed a pillow over her face and repeatedly told her not to look at him or she would be hurt. The assailant then raped her. She stated that he spoke softly.
In October or early November, the May prosecutrix went to the Birmingham City Jail to listen to several voices and attempt an identification of her assailant. She stated that other women were present initially to submit phrases for the participants to recite. Afterwards, she was taken individually to view five or six black males. She had each participant recite the submitted phrases twice and had appellant say them an additional time. She identified appellant as her assailant.
 II
It is well established that several well defined exceptions exist to the general rule that prohibits admission of evidence of other or collateral crimes as substantive evidence of guilt of the accused. All the exceptions are grounded upon relevancy. In the instant case, one exception is applicable, that being relevancy to prove identity of persons. Lewis v. State,399 So.2d 907 (Ala.Cr.App. 1981); Brown v. State, 392 So.2d 1248
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266 (Ala. 1981);Breen v. State, 349 So.2d 113 (Ala.Cr.App. 1977); Tate v.State, 346 So.2d 515 (Ala.Cr.App. 1977).
Limitations have been placed upon the use of the identity exception, and those have been enumerated in Brasher v. State,249 Ala. 96, 30 So.2d 31, 35 (1947):
 "It follows, therefore, that for the purpose of identification, the prosecution should not be permitted to give in evidence other crimes of the defendant, committed on or with other persons, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than to show the defendant's bad character or moral delinquency." (Citations omitted.)
The limitations appear in the following manner in Kilpatrickv. State, 51 Ala. App. 352, 285 So.2d 516, cert. denied,291 Ala. 628, 285 So.2d 252 (1973), which quoted with approvalMason v. State, 259 Ala. 438, 66 So.2d 557 (1953):
 "[E]vidence [of] other crimes alleged to have been committed by the defendant [are inadmissible] unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged."
See Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966).
Thus, to be admissible under the identity exception, the collateral crime must have been committed "in the same novel and peculiar manner" as the pending prosecution. Gamble,McElroy's Alabama Evidence §§ 69.01 (8), 70.01 (22)(b) (3rd ed. 1977).
Appellant's identity as the prosecutrix' assailant was placed in issue through his motion to suppress. The similarities between the prior incidents and the one sub judice easily meet the "novel and peculiar manner" standard for admission of collateral crimes as substantive evidence of appellant's guilt. In particular, the crimes were all committed in the same county, with three being committed in consecutive *Page 807 
months. The crimes were perpetrated in the early morning hours against single adult women, three of whom at the time of the crime were alone in their homes. In each instance, the perpetrator was a black male who spoke in a very distinct soft voice and whose conversation with each victim was extremely similar in pattern and phraseology. In each instance, the victims were threatened with bodily harm. In each instance, the perpetrator went to great lengths to prevent his victim from seeing him and in two instances used a pillow to cover the victim's face. In two instances, the perpetrator inquired about what the victim was concealing under a pillow. In addition, the same two victims were robbed. In three instances, the victims unequivocally identified appellant from his voice and in one instance appellant's fingerprint was found at the point of entry into the residence.
The trial court in its oral charge instructed the jury that the July and August prosecutrixes' testimony was admitted for the limited purpose of showing identity.
A careful review of the record reveals no error in the trial court's ruling denying appellant's motion to suppress because the admitted testimony was clearly relevant to the issue of appellant's identity. Lee v. State, 246 Ala. 69, 18 So.2d 706
(1944); Johnson v. State, 242 Ala. 278, 5 So.2d 632 (1941).
In addition, we feel that the above testimony would have been admissible under the system exception. Lewis, supra; Brown, supra.
We have reviewed appellant's contentions appeal and have found no error. The judgment of the Jefferson Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.