440 So.2d 1155 (1983)
Charles Michael BREWER
v.
STATE.
6 Div. 808.
Court of Criminal Appeals of Alabama.
July 5, 1983.
Rehearing Denied October 4, 1983.
Certiorari Denied November 23, 1983.
*1156 Joel L. Sogol of Sogol & Chandler, Tuscaloosa, for appellant.
Charles A. Graddick, Atty. Gen., and Joseph G.L., Marston, III and Martha Gail Ingram, Asst. Attys. Gen., for appellee.
Charles Freeman, Dist. Atty., and Thomas M. Smith, Chief Asst. Dist. Atty., amicus curiae.
Alabama Supreme Court 83-49.
HUBERT TAYLOR, Judge.
Appellant was convicted of the murder of Diana Lynn Holland and sentenced to life imprisonment. He raises two issues on appeal: whether the empanelling of the grand jury which indicted him was illegal, and whether the evidence of his prior assault on another victim was improper. In our judgment, the grand jury was properly drawn and empanelled and appellant need not be reindicted, yet he is entitled to a new trial for the error of admitting the evidence of the collateral crimes.
Insofar as it relates to the issues on appeal, the State's evidence established that the nude body of twenty-year-old Diana Lynn Holland was found by a fisherman under the Sipsey River bridge in Tuscaloosa County at 10:30 a.m. on July 15, 1980. Miss Holland's neck and left wrist were bound with handkerchiefs, her ankles were tied together with a black brassiere, and she was wearing one sandal. Strewn on either side of her body were a pair of crutches. Expert medical testimony established that the cause of death was strangulation.
During her lifetime, Miss Holland had been afflicted with cerebral palsy and had used crutches to walk. She had been acquainted with appellant and had lived in the same apartment complex with him. According to a statement appellant gave Tuscaloosa Sheriff's investigators, Miss Holland had bought a stereo from appellant and had requested, the evening before her body was found, that appellant come by her apartment to check the stereo because it was not working. Appellant said the victim offered him a glass of lemonade, he drank it, and then he returned to his own apartment alone. He claimed that he was at home in bed by 10 p.m. that night.
Appellant denied that Miss Holland had ever been in his car, yet a consent search of his vehicle revealed that samples of hair on the trunk mat exhibited the same characteristics as known hair samples taken from the victim's body. Fragments of hair matching the victim's were also discovered on a roll of black electrician's tape in appellant's trunk. In addition, mechanic's rags found at the scene with Miss Holland's body contained the same chemical particles as similar rags in appellant's car trunk.
Over appellant's objection and after lengthy arguments were presented to the trial court, the State was allowed to call Ms. Wanda Sue Smith Reedy to the stand. Ms. Reedy testified that eight years earlier, when she was eighteen years old, she worked at the same company with appellant and dated him a few times. On December 17, 1973, as she was returning from *1157 work at 11:15 p.m., appellant's car passed hers on the highway. Appellant turned on the interior light of his vehicle and pulled into a nearby church parking lot. Ms. Reedy followed him and parked her car next to his.
Appellant walked to Ms. Reedy's vehicle, opened the door, told her to move over and put a knife to her throat. He began to choke her with an extension cord and, as Ms. Reedy struggled to get away, appellant struck her on the head with an unknown object and she blacked out. When she regained consciousness, she was fully clothed but had only one shoe on, appellant was gone, and the keys to her car were missing. Ms. Reedy walked to a relative's house nearby for help. Her car keys were later discovered in the trunk of her vehicle and a roll of white adhesive tape was found on the ground at the scene.
The trial court admitted the foregoing testimony with prior limiting instructions that the jury was to consider it "solely on the question of identity and intent or motive." (R. 739)

I
Appellant claims that his plea in abatement was due to be granted because of alleged fraud in empanelling the grand jury which indicted him. He contends that one member of the grand jury venire had been illegally carried over from a preceding grand jury term in violation of § 12-16-70 (amended by 1981 Ala.Acts 1381, No. 788 § 2 (effective January 1, 1982)) and § 12-16-75 (repealed by 1981 Ala.Acts 1381, No. 788 § 8 (effective January 1, 1982)). Those sections provided in pertinent part, the following:
"§ 12-16-70.
"At any session of a court requiring jurors for the next session, the judge ... shall draw from the jury box in open court the names of not less than 50 persons to supply the grand jury for such session...."
"§ 12-16-75.
"The names of all jurors drawn and summoned under this article who are not empanelled shall forthwith be returned by the judge to the jury box in open court, unless they are disqualified or exempt."
Testimony on the plea in abatement established that Mr. Therman Lee was summoned as a potential juror for the first January term of the Tuscaloosa County grand jury. Judge Claude Harris, Jr. excused Mr. Lee from service and told him that he could serve on the grand jury for the next (second January) term. Thereafter, Mr. Lee's name was given to the Circuit Clerk, who kept it until the following term of court.
Circuit Clerk Doris Turner stated that for the following term, that of the grand jury which handed down the indictment against appellant, the judge drew only forty-nine names from the jury box. The fiftieth name was that of Mr. Therman Lee, who had been carried over or "rescheduled" after being excused from service during the previous term.
Further testimony, taken in the light most favorable to the State, showed that Mr. Lee served on a grand jury during the second January term, but that he was not a member of the grand jury which voted to indict appellant or which heard evidence pertaining to the charges in the instant case.
Appellant argues that Mr. Lee's being carried over from one grand jury term to the next contravened the statutory requirement that the names of those jurors who are not empanelled must be returned to the jury box. He also maintains that the "rescheduling" of Mr. Lee as the fiftieth potential juror for the succeeding term violated the statutory rule that the judge draw fifty names from the jury box in open court. Thus, appellant concludes, the indictment against him was returned by an illegally-constituted grand jury and was therefore due to be quashed.
Initially we note that the provisions of §§ 12-16-70 and 12-16-75 are "directory merely and not mandatory." Ala.Code § 12-16-90(a) (1975). Although case law *1158 has established some provisions to be mandatory, notwithstanding expressed legislative intent to the contrary, see Ziniman v. State, 186 Ala. 9, 65 So. 56 (1914) (requirement that defendant be served with jury list in capital case) (dicta), both the number of jurors drawn and the time of their drawing have been held to be merely directory and not to affect the legality of the panel. Dobbins v. State, 274 Ala. 524, 149 So.2d 814 (1963), cert. denied, 376 U.S. 923, 84 S.Ct. 681, 11 L.Ed.2d 617 (1964); Rector v. State, 11 Ala.App. 333, 66 So. 857 (1914).
Further, § 12-16-90(b) provides that
"The jurors selected, drawn, summoned and empaneled under the provisions of this article, whether at an earlier or later day than required by this article, must and shall in all respects be deemed legal and to possess in full in every respect power to perform all of the duties belonging to grand and petit jurors." (Emphasis added.)
In our judgment, the fact that Mr. Lee's name was drawn at a different time from the names of the other forty-nine venire members does not undermine the authority of the grand jury on which he served. The statutes concerning jury selection require only substantial compliance. Lehr v. State, 398 So.2d 791 (Ala.Cr.App. 1981). There is no contention that Lee's name was not originally drawn by the judge in open court, merely that it was drawn on a different occasion from the drawing of the other forty-nine names comprising the grand jury venire. See Ala. Code § 15-15-40 (1975).
Additionally, the trial court had the authority not to return Mr. Lee's name to the jury box but to inform him that he could serve during the next term of court, according to § 12-16-63, Code of Alabama 1975, which states:
"(b) A person who is not disqualified for jury service may be excused from jury service by the court only upon a showing of undue hardship, extreme inconvenience or public necessity, for a period the court deems necessary, at the conclusion of which the person may be directed to reappear for jury service in accordance with the court's direction." (Emphasis added.)
Finally, it is our opinion that even if the summoning of the grand jury on which Mr. Lee served had been marred by a slight irregularity, the failure to comply with statutory requirements does not entitle appellant to relief in the absence of fraud. "Fraud used in this sense has been construed as encompassing more than criminal wiles: `Fraud is a relative term; it includes all acts and omissions which involve a breach of legal duty injurious to others.'" State ex rel. Gregg v. Maples, 286 Ala. 274, 280, 239 So.2d 198, 203 (1970) (quoting Inter-Ocean Casualty Co. v. Banks, 32 Ala. App. 225, 227, 23 So.2d 874, 875 (1945) (emphasis added)).
Because Mr. Lee took no part in hearing the evidence of, or voting to indict appellant for, the instant offense, any irregularity relating to the grand jury of which Lee was a member cannot have affected appellant. As this court stated in Hammond v. State, 354 So.2d 280, 286-87 (Ala.Cr.App. 1977), cert. quashed, 354 So.2d 294 (Ala. 1977), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978),
"As it relates to composition of grand juries, the fraud necessary to quash an indictment is construed by us to encompass only willful and deliberate omissions of persons eligible to serve which would result in some demonstrable prejudice to the appellant." (Emphasis added.)
At the hearing on his plea in abatement, appellant demonstrated no prejudice and the trial court was thus correct in overruling the plea.

II
Appellant claims that the trial court erred by admitting evidence of the prior assault on Wanda Sue Smith Reedy. While in our judgment the question is extremely close, we conclude that any doubt about the admissibility of the testimony should, given the highly prejudicial nature of the evidence, be resolved in favor of the accused. *1159 On this basis, the conviction is reversed, and the cause remanded for a new trial.
The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947). On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
Many Alabama cases have adopted the following exceptions to the general rule, or tests for relevancy, to determine whether evidence of uncharged crimes is admissible:
"(1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes."
E.g., State v. Bobo, 56 Ala.App. 622, 626, 324 So.2d 336 (1975) (quoting Wharton's Criminal Evidence § 31).
Although exception number two, identity, is arguably the most nearly applicable in this case, we do not believe the admission of the evidence under review here is authorized by any of the categories. The first, res gestae, clearly does not apply; the offenses were separated by almost seven years' time. Although that degree of remoteness alone does not operate to exclude the prior act, see Cofer v. State, 440 So.2d 1116 (Ala. Cr.App.1983), and affects its weight rather than its admissibility, see Wharton's Criminal Evidence § 260 at 621 n. 14 (C. Torcia 13th ed. 1972), the distance between the two offenses precludes their being considered as one continuing offense or part of the same res gestae.
The third exception, namely guilty knowledge, is not in issue here. Compare Dennison v. State, 17 Ala.App. 674, 88 So. 211 (1921) (guilty knowledge immaterial in prosecution for larceny) with Goodman v. State, 401 So.2d 208 (Ala.Cr.App.1981) cert. denied, 401 So.2d 213 (Ala.1981) ("Knowledge" a key element in prosecution for receiving stolen property).
Although the trial judge allowed the evidence to prove appellant's intent, and the State argues that it was admissible on that basis, a closer examination of the "intent exception" reveals that it, too, is inapplicable because appellant's intent was not at issue. Criminal intent can be inferred from the manner in which Diana Lynn Holland was killed and her body disposed of, especially in the absence of any claim or glimmer of evidence that the killing was inadvertent or in self-defense. "Where the requisite intent is presumed or inferred from proof of the criminal act itself or where the intent of the defendant is not in issue, evidence of other crimes is not admissible." Wharton's Criminal Evidence § 245 at 560 (C. Torcia 13th ed. 1972).
"When the element the State bears the burden of proof on can `be inferred from the act itself,' the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief." Ruiz v. State, 579 S.W.2d 206, 209 (Tex.Cr. App.1979). "[W]hen the act charged is not equivocal, but the criminal intent is a necessary conclusion from the act, this theory of other acts as showing intent may not be availed of." McCormick on Evidence § 190 at 450 n. 42 (E. Cleary 2d ed. 1972). "The peculiarity of intent, as a factum probandum, is that an act is assumed as done by the defendant, and the issue is as to the kind of state of mind accompanying it." 2 Wigmore on Evidence § 300 at 238 (Chadbourn rev. 1979).
A review of the foregoing authorities and the Alabama cases on this point indicates that the "intent exception" applies *1160 only if the defendant's conduct is ambiguous, i.e., wrongful if done with an improper intent but not criminal if done innocently, see, e.g., Carlton v. State, 415 So.2d 1241 (Ala.Cr.App.1982) (defendant admitted act but claimed self-defense); Lucy v. State, 340 So.2d 840, 846 (Ala.Cr.App.1976), cert. denied, 340 So.2d 847 (Ala.1976) (if defendant admits shooting but contends it was accidental); Bobo v. State, supra (defendant admitted he was present at scene of robbery but claimed he acted under duress of older and larger companions), or if it becomes necessary to show a particular intent in order to establish the offense charged, see, e.g., Cofer v. State, supra (accused admitted altercation with victim but denied sexual motivation or encounter); Hogue v. State, 54 Ala.App. 682, 312 So.2d 86 (1975) (defendant's attack on woman amounted to an assault but whether intent was to ravish, rob, or murder not clear); Wilkins v. State, 29 Ala.App. 349, 197 So. 75 (1940) (same).
Thus, when the defense is an outright denial of the act, such as by setting up an alibi, intent may not usually be proved by evidence of prior crimes. As Wigmore observes, "[T]he peculiar feature of this process of proof is that the act itself is assumed to be done. ..." 2 Wigmore on Evidence § 302 at 245 (Chadbourn rev. 1979) (emphasis in original).
In the case before us, appellant did not take the stand. Nevertheless, his statement to the Tuscaloosa authorities and the defense witnesses called at trial all tended to establish an alibi defense for him. Under these circumstances, there was no real dispute regarding the issue of criminal intent accompanying the killing of Diana Lynn Holland. Either appellant committed the act, in which case his intent was evident from its brutality, or he did not commit the act, in which case his intent as shown by the earlier assault was immaterial. See McCormick on Evidence § 190 at 452 (E. Cleary 2d ed. 1972).
The next "pigeonhole" advanced for the admission of appellant's prior assault on Ms. Reedy is motive. As it applies to homicide cases this category also includes number seven, malice. See C. Gamble, McElroy's Alabama Evidence § 70.01(12)(3) at 155 (3d ed. 1977).
In order for evidence of appellant's assault on Ms. Reedy to have been admissible, it must have tended to show a motive for his assault on Miss Holland. See C. Gamble, McElroy's Alabama Evidence § 69.01(7) (3d ed. 1977). "Motive" has been defined as "the moving power which leads the mind to desire the result and form the purpose." Bynum v. State, 348 So.2d 804, 819 (Ala.Cr.App.1976), cert. quashed, 348 So.2d 828 (Ala.1977). However, the first assault provides no inference as to what "moving power" may have "led [appellant's] mind to desire [the death of Miss Holland] and [to] form the purpose [to kill her]." If anything, the two crimes can both be termed "senseless" precisely because they appear to be devoid of motive. In fact, the State, in a commendable effort to persuade us that the absence of motive makes the two crimes distinctive, concedes the following:
"There was no known motive for either assault.
"Both instances were triggered by no apparent reason.
"Both attacks were stamped with appellant's mark of `no motive.'"
Brief of Appellee at 23, 24, 29.
Because appellant's prior assault provides no logical link to the reason for his second crime, we do not believe the evidence in question was relevant on the issues of motive or malice. Something less speculative than "appellant's mark of no motive" is required in order for the jury to infer from the commission of the first crime that appellant was guilty of the second. Compare Terry v. State, 397 So.2d 217 (Ala.Crim. App.1981), cert. denied, 397 So.2d 223 (Ala. 1981) (jealousy of former girlfriend's suitors); Laing v. State, 390 So.2d 1154 (Ala.Cr. App.1980), cert. denied, 390 So.2d 1160 (Ala. 1980) (desire to conceal wrongdoing and reap pecuniary gain); Bynum v. State, supra (revenge-murder of attorney who represented those charged with burning defendant's *1161 barn); Fuller v. State, 269 Ala. 312, 113 So.2d 153 (1959) (political-murder of candidate to prevent him from carrying out campaign pledges).
Wharton's sixth exception, system, includes the principles underlying the motive, intent, and identity tests, according to McCormick. See McCormick on Evidence § 190 at 448-49 (E. Cleary 2d ed. 1972). On the other hand, Wigmore uses the "system" rules interchangeably with what Wharton terms the "identity" exception. See 2 Wigmore on Evidence § 304 (Chadbourn rev. 1979). Judge McElroy's treatise on evidence referred to the test as one of "plan, design, scheme or system," see C. Gamble, McElroy's Alabama Evidence §§ 69.01(6), 70.01(12)(d) (3d ed. 1977), while Alabama appellate opinions have variously termed the rule the exception for "pattern," see Mayberry v. State, 419 So.2d 262, 268 (Ala. Cr.App.1982); McDonald v. State, 57 Ala. App. 529, 329 So.2d 583 (1975) cert. quashed, 295 Ala. 410, 329 So.2d 596 (1975), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976), for "modus operandi," see Smith v. State, 409 So.2d 455, 458 (Ala.Cr.App. 1981); Hayes v. State, 384 So.2d 623, 626 (Ala.Cr.App.1979), cert. quashed, 384 So.2d 627 (Ala.1980), or for "mark" or "signature" crimes, see Thomas v. State, 409 So.2d 955, 956 (Ala.Cr.App.1981).
Regardless of the label for the exception, we intend our discussion here to include the same principles enunciated by the foregoing authorities, and to describe that rule which allows evidence of a prior crime whenever the circumstances of the charged and non-charged crimes exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person. For the sake of consistency here, we employ the phrase "signature crimes" to describe offenses so similar in pattern, plan, design, scheme, system or modus operandi that they "identify" the defendant as the perpetrator of both.
One of the common threads running through all of the treatise-writers' explanations of the signature exception is that a strict test of similarity between the charged and non-charged offenses should be applied. McCormick observes the following:
"[T]he courts are stricter in applying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind."
McCormick on Evidence § 190 at 452 (E. Cleary 2d ed. 1972). Wigmore explains the theory as follows:
"§ 304. Theory of evidencing design or system. When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's design or plan to do it (§ 102 supra.) This in turn may be evidenced by conduct of sundry sorts (§ 234 supra) as well as by direct assertions of the design (§ 1725 infra.) But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent (§ 302 supra.) The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a preexisting design, system, plan, or scheme, directed forwards to the doing of that act. In the former case (of intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.
"The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of *1162 which they are the individual manifestations."
"....
"It will be seen that the difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity. This is another reason why the precedents are so difficult to reconcile; for the courts have not always perceived that there are in truth these two distinct purposes and therefore two distinct tests for such evidence.
"Nevertheless the distinction is a real one. It is to be seen in concrete illustrations, even though in abstract definition it is not easy to formulate. The clue to the difference is best gained by remembering that in the one class of cases the act charged is assumed as done, and the mind asks only for something that will negative innocent intent; and the mere prior occurrence of an act similar in its gross featuresi.e., the same doer, and the same sort of act, but not necessarily the same mode of acting nor the same sufferermay suffice for that purpose. But where the very act is the object of proof, and is desired to be inferred from a plan or system, the combination of common features that will suggest a common plan as their explanation involves so much higher a grade of similarity as to constitute a substantially new and distinct test."
2 Wigmore on Evidence § 304 at 249-50, 250-51 (Chadbourn rev. 1979) (emphasis in original).
Many Alabama cases have dealt with crimes which were deemed so similar to each other that they could be said to form a pattern identifying the accused. See, e.g., Thomas v. State, 409 So.2d 955 (Ala.Cr.App. 1981); Lewis v. State, 399 So.2d 907 (Ala. Cr.App.1981); Hayes v. State, 384 So.2d 623 (Ala.Cr.App.1979), cert. quashed, 384 So.2d 627 (Ala.1980); Stanley v. State, 57 Ala. App. 83, 326 So.2d 148 (1976); McDonald v. State, supra; Hogue v. State, 54 Ala.App. 682, 312 So.2d 86 (1975); Mitchell v. State, 45 Ala.App. 668, 235 So.2d 917 (1970); McKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1948); Wilder v. State, 30 Ala.App. 107, 1 So.2d 317 (1941).
In Thomas, both robberies committed by the defendant occurred within a half-hour and at locations less than a mile apart. The defendant carried a pistol, and made the victimsboth Auburn studentsremain in the bathroom while he cased the apartments. The assailant had trouble detaching the telephone cords in both dwellings and took no change on either occasion. Our court had no difficulty finding a sameness or "pattern" in the two offenses.
Similarly, in Lewis, the defendant's prior robberies of elderly females by grabbing their purses as they were returning from the grocery store after dark established a "design" or "signature" pointing to the accused.
In Hayes, the accused assaulted two young women at 3:00 a.m. near their own front doors, one as he was kissing her goodnight and the other as he was leaving after a "friendly talk." In both cases the assailant placed his hands around the women's backs and suddenly began to apply pressure to their necks.
Stanley dealt with two burglaries of the same house with the same tenantfive months apart. Likewise, McDonald involved a judge who propositioned female litigants after calling them to his chambers, closing the door, and offering "help" on legal matters pending before him.
The attacker in Hogue drove an orange car, stopped female drivers at mid-afternoon near the same exit on Interstate 59 to tell them their mufflers were not working, and then pulled a knife on them and demanded money.
The Mitchell assailant waylaid pre-teenage girls on their way to school by preying on their fears of his brown and white dog. Similarly, the McKenzie defendant lured *1163 women to the same secluded spot on the pretense of looking for a lost bracelet. In Wilder, the thief managed to snatch women's purses in movie theaters by sitting next to them, then changing seats until he had a more advantageous position from which to steal their handbags.
When compared to the facts of the foregoing Alabama cases, the circumstances surrounding the two offenses in the present case do not, in our judgment, have "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." Wigmore on Evidence, supra § 304 at 249. Under Dean Wigmore's test, we think the assault on Ms. Reedy qualified as no more than "the mere prior occurrence of an act similar in its gross featuresi.e., the same doer, and the same sort of act, but not ... the same mode of acting nor the same sufferer." Wigmore on Evidence, supra § 304 at 251.
The two incidents both involved young white females who were acquainted with the appellant and who were later strangled. Both victims were found with one shoe on. There the similarities end. In contrast, the victims themselves were very different Miss Holland was crippled and presumably unable to defend herself, while Ms. Reedy, for aught that appears, had no handicap thus belying any "pattern" in appellant's choice of helpless victims. Compare Lewis v. State, supra (Robbery of elderly women alone).
Although the place of Miss Holland's murder is unknown, her body was disposed of in a remote area, while Ms. Reedy was assaulted in her automobile in a public parking lot. Perhaps most significantly, there was no hint of sexual motivation or molestation in the Reedy assault, while Miss Holland's nude body was found with a black brassiere wrapped around her ankles, indicating some sexual overtones to the assault.
Another common thread found in the commentaries is that the collateral and current offenses must, unless they bear such a close resemblance to each other that they can be assumed to derive from the same plan or planner, have been committed in the same "novel," see C. Gamble, McElroy's Alabama Evidence § 69.01(8) at 138 (3d ed. 1977), or "peculiar" manner, see Underhill's Criminal Evidence § 210 at 636-37 (P. Herrick 6th ed. 1973). See also Thomas v. State, 409 So.2d 955 (Ala.Cr.App.1981) (defendant's modus operandi was not "novel and peculiar" in the two offenses, but second crime bore close resemblance to first).
The Alabama courts have noticed the defendant's novel and peculiar modus operandi in at least three recent cases. See Nichols v. State, 422 So.2d 804 (Ala.Cr.App. 1982); Smith v. State, 409 So.2d 455 (Ala. Cr.App.1981); Breen v. State, 349 So.2d 113 (Ala.Cr.App.1977). In Nichols, the defendant was tried for rape and the State sought to introduce evidence of three prior rapes committed by him. All of the victims testified that their assailants spoke in a distinctively soft voice and tried to keep them from seeing his face, twice covering them with a pillow for this purpose. He also inquired whether the victims were hiding anything under their pillows, and he later robbed them.
In Smith, the court noted the peculiarity of a rapist's apologizing to his three victims and returning them to a place of safety after he had attacked them sexually. In Breen, the court commented on the novelty of the defendant's using sheet hems with green stitching to bind all of his victims.
In the present case, there is no oddity common to the Reedy assault and the Holland murder. While both victims were young white females who knew the appellant and who were later choked, we discern nothing "novel" or "peculiar," as the case law has interpreted those terms, in these circumstances. We cannot say that the strangulations bore the appellant's unusual "mark" or "signature" since he used a different method for each victim, first an extension cord and then knotted handkerchiefs. Compare State v. Gourley, 224 Kan. 167, 578 P.2d 713 (1978) (after breaking in to steal guns and jewelry, defendant strangled *1164 both victims with electrical cords). See also People v. Hanei, 81 Ill.App.3d 690, 38 Ill.Dec. 1, 403 N.E.2d 16 (1980), cert. denied, 101 S.Ct. 1382 (1981) (two murders by poisoning with thallium in order to acquire deeds to property); State v. Barfield, 298 N.C. 306, 259 S.E.2d 510 (1979), cert. denied, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980) (five murders by poisoning with insecticide in order to prevent victims from discovering forgeries by defendant); People v. Baker, 103 Mich.App. 704, 304 N.W.2d 262 (Ct.App.1981) (three rapes accomplished by entering hotel rooms while maids were cleaning).
Finally, Wharton's eighth specific exception to the other crimes rule, "relevancy to rebut special defenses," has no bearing here. In the absence of a special defense such as entrapment, see Brown v. State, 392 So.2d 1248 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981), or insanity, see Thomason v. State, 46 Ala.App. 10, 237 So.2d 121 (1970), the State's rebuttal evidence is not in question. Likewise, Wharton's final test, "relevancy in various particular crimes," has no application here. See Smith v. State, 342 So.2d 422 (Ala.Cr.App. 1977).
We have canvassed the list of exceptions outlined by the commentators and have found no vehicle by which the evidence introduced below would have been, in our opinion, properly admissible. We recognize that the problem is "not merely one of pigeonholing, but one of balancing," McCormick on Evidence, supra § 190 at 453, and we conclude that the evidence of Ms. Reedy's prior assault had no probative value in relation to its inflammatory effect on the factfinders, and that its admission constituted reversible error for which appellant is entitled to a new trial.
REVERSED AND REMANDED.
All the Judges concur.

ON REHEARING
HUBERT TAYLOR, Judge.
In addition to the authorities heretofore cited, this court also cites the very recent opinion of the Supreme Court of Alabama in Ex parte Cofer, 440 So.2d 1121 (Ala. 1983).
OPINION EXTENDED; REQUEST FOR FACTS DENIED; APPLICATION OVERRULED.
All the Judges concur.