164 So. 114

## PEARCE v. STATE.

6 Div. 662.

Court of Appeals of Alabama.

June 4, 1935.

Rehearing Denied June 25, 1935.

Beddow, Ray & Jones, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Geo. Lewis Bailes, Sol., and Robt. G. Tate, Deputy Sol., both of Birmingham, for the State.

RICE, Judge.

From the brief filed here on behalf of the Attorney General we take the following, as embodying a correct outline of the questions around which the trial in the court below turned, to wit:

"The appellant, Clifton Edward Pearce was jointly indicted with one John H. David, for the offense of obtaining a check of the value of One Thousand and One 88/100 Dollars from the Metropolitan Life Insurance Company of New York by means of false pretense. The appellant demanded a severance, and upon his trial was convicted by a jury and sentenced by the Court for a term of one year and one day as a minimum and for a term of three years as a maximum, and from this judgment and sentence he appeals.

"On November 3, 1930 the appellant, then an agent of the Metropolitan Life Insurance Company, wrote the application of Frank Lewis, negro, for insurance. Pursuant to such application, a policy in the sum of $1,000.00 was issued, Naomi Woodruff, aunt of Frank Lewis, being named as beneficiary, and the policy being delivered to and kept by her. The insured never at any time saw the policy.

"On or about April 5, 1932 proofs of a claim under said policy were submitted to the local office of the Insurance Company, purporting to show that said Frank Lewis, the insured, had died on March 25, 1932 as the result of lobar pneumonia, at 1913 Avenue L, Ensley. These proofs of claim consisted of Naomi Woodruff's statement as claimant, the statement of Dr. L. J. Johns, as physician, and identification statement. These papers were forwarded to the home office of the Company where they were examined and approved for payment, and a check was issued and returned to the local office. Said check was for the sum of $1,001.88 payable to Naomi Woodruff.

"This check was deposited in the First National Bank of Birmingham as the first and only deposit in a new account opened by this woman on the date of the deposit, and the proceeds were withdrawn as shown by her ledger cards.

"Frank Lewis, the insured, was not dead, and had never lived at 1913 Avenue L, Ensley, and did not know anything about a claim having been filed to collect the insurance.

"However, at or about the time alleged in the claim papers, one Monroe Mauldin or Burrell did die of lobar pneumonia, at 1913, Avenue L, Ensley.

"The facts above are without dispute.

"Naomi Woodruff, the beneficiary, testified: 'That she paid the premiums on the policy to the appellant; that he told her he knew of a way they could get some money; that he got the policy and the next day or so he and another man came and the papers were signed; that something like ten days thereafter, appellant brought the Company's check there; that she came

down to the Burial Association with him in his car; that he sat outside while she went in and Cox and Brown (the undertakers) came out with her; that she got in a car with them and went to the Bank, appellant staying at the Burial Association; that at the Bank she opened the account, deposited the check, obtained $150.00 and went back to the Burial Association; that the appellant came in and she gave Cox $55.00 of the $150.00; that from there appellant carried her back to Fourteenth Street and Avenue J, in Ensley; that she did not give him any money at that time; that on April 15th appellant came to her house in his car and wrote the two checks payable to "cash" (State's Exhibits 7 and 8).—One for $50.00 and the other for $615.00; that the $50.00 check appellant told her to give to Cox—the $615.00 check he carried away.'

"Mrs. Pearl Lee Newsome a clerk in the local office of the Company testified to the mechanics of forwarding claim and receiving check back. She also testified 'on State Exhibit No. 2, proof of death, claimant's statement, in my best judgment that is in the handwriting of the defendant.'

"Dr. L. L. Schulhoffer qualified as a handwriting expert and testified in substance that the handwriting on the $50.00 check and the $615.00 check, other than the signatures, was the handwriting of the defendant.

"From the above summary, it will be seen that the Insurance Company was defrauded by means of a false pretense, and, therefore, only two questions remain.

"(1). Did the defendant participate, aid or abet in the said offense?

"(2). If he did, did he do it with the intent to defraud?"

(It will be observed that the beneficiary in the policy referred to above is indifferently designated as "Naomi" Woodruff and "Niomi" Woodruff, but no point is made, nor question arises, in that regard.)

For the purpose of making clear the holding, we shall presently announce with regard to one of the two major questions deemed necessary to be treated by us in the discharge of our duties, we will quote (as we approve) the following, taken from the second of the excellent briefs filed here on behalf of appellant, to wit:

"It should be borne in mind at all times that the State had no difficulty in proving that the offense of false pretense was committed on the insurance company. A false pretense with all of its criminal elements was admitted by Naomi Woodruff. It was committed by her with full *knowledge* on her part that she was at the time committing a fraud on the company. What she did was not done through *mistake or accident.* It was done deliberately.

"The defense is not quibbling over the issue of the actual commission of the crime of false pretense as defined by section 4131 of the Code of Alabama.

"In the case at bar this Court is not troubled with a study of Code Section 4131, or the question of whether or not an offense has been committed under said section of the Code. Therefore, we pass from that question to the main issue involved, and that is whether (or not) the appellant is *connected* with the commission. of said offense. The question of law at issue involves a rule of evidence."

From all the above it is clear, not only that the offense of violating, feloniously, the terms of Code 1923, § 4131, was committed, but that, according to the testimony of Naomi Woodruff, the admitted accomplice, appellant was guilty.

So, naturally, the first question that arises is, *Was* the testimony of Naomi Woodruff corroborated in the way the law requires?

Section 5635 of the Code of Alabama of 1923 is in the following language, to wit: "A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

It was the same (under the section No. 4895) in the Code of Alabama of 1876.

Illuminating is the following language taken from the opinion by Mr. Justice (later Chief Justice) Stone, for our Supreme Court, in the case of Lumpkin v. State, 68 Ala. 56, to wit: "To authorize a conviction of a felony on the testimony of an accomplice, such testimony must be corroborated by other evidence tending to connect the defendant with the commission of the offense.—Code of 1876, section 4895. *The statute requires this, and only this.* The charges asked were properly refused, because they assumed, as a rule of law, that the defendant could not be con-

victed on the testimony of an accomplice, unless there was other testimony which, of itself, would authorize a conviction. This would be to deny to the testimony of the accomplice all weight before the jury. Such is not the law.—Smith v. State, 59 Ala. 104; Lockett **v.** State, 63 Ala. 5." (Italics ours.)

In a nutshell the above quotation from the opinion in the said Lumpkin Case, decided in 1880, states the law as it exists with us to-day. We could write on, at great length, discussing the applications that have been made of the law as set forth in this Code section (5635) to the varying states of facts that have, from time to time, arisen, but we really do not see the necessity.

It seems clear enough to us that, if the jury found, as they were authorized to do, it *may* have been admitted, that the "proof of death, claimant's statement," above mentioned, was in the handwriting of appellant, the supposed dead negro not being dead at all, here was corroboratory evidence "tending to connect the defendant (appellant) with the commission of the offense." The probative force of such evidence was a matter strictly for the jury's determination. Ross v. State, 74 Ala. 532; Dodd v. State, ante, p. 367, 160 So. 267.

Not only is it true that "the purpose of the corroboration * * * is, not necessarily to prove the defendant is guilty, but to meet the requirements of the statute, —thus convincing the jury that the testimony of the accomplice is true, and authorizing them to found their conviction upon it" (Malachi v. State, 89 Ala. 134, 8 So. 104, 108), but, as we read the cases, the corroboratory evidence, if it meets the test of "tending to connect the defendant with the commission of the offense," need not be, in and of itself alone, that tending in any wise to fasten guilt upon the defendant. For instance, in the case of Horn v. State, 15 Ala. App. 213, 72 So. 768, this court held—we yet think correctly—that the mere fact that the father of one of the accomplices testified that his son and the defendant and *another* accomplice left his (the father's) house about 8:45 p. m. and "went up the road together toward Alonzo Martin's" (whose house was burglarized that same night) was sufficient corroboration to support the testimony of the accomplice that the defendant was guilty. It occurs to us, and we hold, that, if the perfectly innocent act of

"going up the road" together with the accomplice was sufficient corroboration, when shown in the evidence, to base a conviction upon, then filling out the "proof of death, claimant's statement," to collect the life insurance on a man that was not dead, was likewise; the accomplice's testimony in each case fully making out the State's charge.

So we hold there was no error in refusing to give to the jury the duly requested general affirmative charge to find in appellant's favor, on the ground the testimony of the accomplice Naomi Woodruff was uncorroborated, or, for that matter, on any other ground.

Where, as in the instant case, an act found to be performed by the defendant (appellant)—the filling out of the "proof of death, claimant's statement"— was an act essential to the perpetration by Naomi Woodruff of the fraud upon the insurance company which she admits she perpetrated, and where, under the circumstances shown, defendant's (appellant's) said act may have been performed in perfect ignorance of any fraudulent purpose or scheme, or, on the other hand, as a means of *aiding* in the perpetration of the fraud, it was altogether proper to admit testimony tending to show other offenses of the same nature to have been committed by appellant. Dennison v. State, 17 Ala. App. 674, 88 So. 211; Sweeney v. State, 25 Ala. App. 220, 143 So. 586. And see Norris v. State, 170 Ala. 484, 280 S. W. 398. Of course, such testimony should have been, and doubtless would have been, upon proper request, limited in its operation (by charge of the court) to its legitimate purpose as outlined in the Dennison and Sweeney Cases, supra. See Johnson v. Day (Ala. Sup.) 160 So. 340.[1] But we find no such request to have been made, and the objections, as interposed, to all the testimony of the nature under discussion, were properly overruled.

What has been written disposes, adversely to their contentions, of the two principal questions so vigorously argued here by appellant's able counsel as calling for a reversal of the judgment of conviction.

But we have not been unmindful of our duty under Code of Ala. 1923, § 3258. We have carefully considered "all questions

---

[1] 230 Ala. 165.

496

apparent on the record or reserved by bill of exceptions," but we find none, other than the two discussed hereinabove, which seem to merit separate treatment. It is manifest that no prejudicially erroneous action was taken or ruling made.

. The appellant, it is true, proved an excellent reputation. But we find the learned trial judge careful to impress upon the jury this fact and their duty to give appellant the full benefit of same in their consideration of the testimony in the case. There is nothing to indicate they did not do so.

So far as we can observe, after careful study, or so far as has been pointed out, contrariwise, to us by the capable counsel representing appellant both here and in the court below, appellant had a fair and carefully conducted trial.

The judgment of conviction is affirmed.

Affirmed.

