494 So.2d 164 (1986)
Steven Lawrence SAFFOLD
v.
STATE.
5 Div. 59.
Court of Criminal Appeals of Alabama.
March 25, 1986.
Rehearing Denied May 13, 1986.
Certiorari Denied August 1, 1986.
*166 Ruth S. Sullivan, Dadeville, for appellant.
Charles A. Graddick, Atty. Gen., and Mary Ellen Fike Forehand, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-981.
PATTERSON, Judge.
Appellant, Steven Lawrence Saffold, and a co-defendant, Randy Eugene Futral, were indicted together for theft of property in the second degree in violation of § 13A-8-4, Code of Alabama 1975.[1] Appellant pleaded not guilty, and was tried separately before a jury. He was found guilty as charged in the indictment, and was sentenced to five years in the penitentiary and ordered to make restitution of $165. From this judgment he appeals.
Appellant owned and operated a business in Alexander City known as Steve's Discount Variety. Randy Eugene Futral worked for him as a salesman. In September and October 1984, appellant prepared ten to twelve checks in various amounts, which purported to be payroll checks of Steve's Discount Variety, payable to Futral. Appellant delivered the checks to Futral and asked him to cash them at various businesses in the area and bring the money back to appellant. Futral complied. The checks were not payroll checks as represented. Futral was always paid in cash for his services as a salesman for the company. At the time the checks were issued, there were insufficient funds in the business checking account to cover them, and appellant knew this. The account upon which these checks were written was in the Bank of Camp Hill. At appellant's instructions, Futral opened bank accounts in AmSouth Bank of Wetumpka and C B & T Bank of Columbus, Georgia, with initial deposits of $50 and $100, respectively, in the name of R.E. Futral Enterprises. When the so-called payroll checks were dishonored and began to "bounce," other checks were written on the Wetumpka and Columbus banks, ostensibly to cover the shortage of funds in the Camp Hill Bank, but appellant apparently cashed them or deposited them and immediately withdrew the money. About $16,000 in checks were written on the Wetumpka bank alone, while only $50 had been deposited in the account. On occasions, appellant would send Futral out to cash so-called payroll checks, ostensibly to get money to cover checks that had "bounced."
The indictment in the instant case arises from the cashing of one of the above "payroll" checks in the amount of $189 at Voss General Merchandise. On this occasion, Futral purchased a small amount of merchandise before presenting the check for payment. This was his usual practice in cashing the checks. He received the merchandise and $165 in cash from Ms. Voss. The check was subsequently dishonored by the Camp Hill Bank and returned to Voss General Merchandise marked "Insufficient funds." Ms. Voss attempted to contact appellant and was unable to find him. She discovered that appellant's business, Steve's Discount Variety, had closed and his stock of goods had been moved. A sign was in the window of appellant's former place of business which read, "Closed to Restock For Christmas." Neither appellant nor Futral ever contacted Ms. Voss about the check, and Voss General Merchandise was unable to collect and bore the loss. Appellant had told Futral after the "payroll" checks had been cashed that he was moving his business to Anniston. Appellant's *167 merchandise was moved to a warehouse in Goodwater, where it was being sold.
Appellant, after being given proper warnings in compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and after acknowledging that he understood his rights, waived his right to remain silent and made a statement, which was introduced into evidence, admitting the scheme and stating that it was his idea.
Appellant offered no evidence in his behalf, and did not testify. He raises three issues on appeal.

I
Appellant first contends that there was insufficient evidence introduced by the State to prove the essential elements of the offense charged. This issue was properly raised by motion for judgment of acquittal at the conclusion of the State's case, and by motion for a new trial.
In reviewing the sufficiency of the evidence the appellate courts of this state are bound by a number of well established rules. In deciding whether or not there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the appellate court must review the evidence in the light most favorable to the prosecution. Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (1979); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 363 So.2d 877 (Ala.1979); Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975). This court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Johnson v. State. Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980); McBryar v. State, 368 So.2d 575 (Ala.1979); 7 Ala. Digest, Criminal Law, Key No. 1159.3.
The action of the trial court in denying a motion for judgment of acquittal and in denying a motion for a new trial on the ground of insufficient evidence must be reviewed by determining whether or not there exists legal evidence before the jury at the time the motions are made, from which the jury by fair inference could find the defendant guilty. Johnson v. State; Thomas v. State, 363 So.2d 1020 (Ala.Cr. App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State.
There is a presumption in favor of the correctness of a jury's verdict, and when the trial judge declines to grant a new trial, that presumption is strengthened on appeal. Willis v. State; Johnson v. State; Tolliver v. State, 50 Ala.App. 654, 282 So.2d 92 (1973).
A verdict of guilty will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust. Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969); Duncan v. State, 436 So.2d 883 (Ala.Cr.App.), cert. denied, 436 So.2d 883 (Ala.1983); Johnson v. State.
Appellant has been convicted of the crime of theft of property in the second degree. § 13A-8-4. "Theft of property" is defined in § 13A-8-2, as follows:
"A person commits the crime of theft of property if he:
"...
"(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property."
In the instant case, appellant is specifically charged in the indictment with knowingly obtaining by deception, control over $165, the property of Voss General Merchandise, *168 with intent to deprive it of its property. § 13A-8-2(2).
The trial court charged the jury on the elements of the offense charged. It charged the jury, in part, as follows:
"If you believe beyond a reasonable doubt, that at the time the check in question was written, that is, the check to Mrs. Voss, at the time it was written by this defendant, there was not enough money in the bank account to cover it, and if you are convinced beyond a reasonable doubt that the defendant knew there wasn't enough money in the bank account to cover it, and if you are convinced beyond a reasonable doubt that he sent Mr. Futral out with those checks, including the check to Mrs. Voss to cash, to cash those checks and bring the money back to him, if you believe all of that beyond a reasonable doubt, then the State has proved all of their case except for one thing. And I might add after those items I have judt mentioned, there's no dispute in the evidence but what those things were facts and they have been proved to you, without any dispute. That leaves us one question remaining. And that is, what was the intent of this defendant, what was in his mind at the time he wrote that check, which Mrs. Voss later cashed, what was in his mind with respect to at some time in the future making that check good. If he intended at some time in the future, to make that check good either with cash or a good check or make it good by another rubber check. If that was his intent, he would be innocent of the charges contained in this indictment....
"So, ... if you believe that this defendant intended at some time in the future to come in and cover the check that was given to Mrs. Voss, either with cash or by another good check, or by a rubber check, given to somebody or written on somebody else, you've got to find the defendant not guilty.
"In other words, to put it another way, before you can find him guilty, you've got to be convinced beyond a reasonable doubt that at the time he wrote the check to Mrs. Voss that she cashed, and at the time she cashed it, in his mind, in this man's mind he intended, I'm never going to make any of those checks good. That's what had to be in his mind. I've written those checks, ten or fifteen of them, and under no circumstances am I ever going to make them good. That's what the State has got to prove to you beyond a reasonable doubt before you can convict this defendant of the charge contained in this indictment.
"This is not a bad check case, this is a felony theft case. And that's why the State has got to prove that to you beyond a reasonable doubt. That at the time the check was written that Mrs. Voss cashed, this defendant intended, after it bounced, he would never make it good. You've got to be convinced of that beyond a reasonable doubt before you can convict him of the charge contained in this indictment."
Appellant was satisfied with the court's oral charge.
After examining the evidence, and applying the proper standards of review, we find that there was sufficient evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that appellant was guilty of the crime charged in the indictment, i.e., theft of property in the second degree. § 13A-8-4. The State's evidence proved that Voss General Merchandise was the owner and in possession of the $165, and parted with it due to the deception practiced upon it by appellant. Appellant obtained control over the $165, and whether or not at the time he uttered and cashed the check, he intended to deprive Voss General Merchandise of the money, and never intended to make the check good or reimburse Voss General Merchandise for its loss, was a question for the jury. See Delevie v. State, 454 So.2d 1044 (Ala.Cr.App.1984); Craig v. State, 410 So.2d 449 (Ala.Cr.App.1981). There was abundant evidence from which the jury could reasonably conclude that at the time the check was uttered, Saffold knew that the check would be dishonored, and had no *169 intention to make it good, but, on the contrary, intended to deprive Voss General Merchandise of the money. The overall check writing and cashing scheme practiced by appellant with the assistance of Futral, during September and October 1984, coupled with the closing of his business and the removal of his merchandise, strongly evidences an intent to deprive Voss General Merchandise of the $165.
Accordingly, appellant's motions for judgment of acquittal and for a new trial, based on the assertion of insufficient evidence, were properly denied.

II
Appellant next contends that the conduct of the prosecuting attorney throughout the trial was such that "it might have influenced the jury to convict" and the failure of the trial court to grant numerous motions for mistrial made due to such alleged prosecutorial misconduct constituted reversible error. The bulk of appellant's argument under this contention concerns the introduction of evidence by the State of other check transactions, and this issue will be discussed later in this opinion under Section III. As to the other claims of appellant under this section, we find no merit, and hold that the trial court properly overruled appellant's various mistrial motions. The granting of a motion for a mistrial is within the sound discretion of the trial court and its determination will not be reversed unless a clear abuse of discretion is shown. Walker v. State, 416 So.2d 1083 (Ala.Cr.App.1982); Bowman v. State, 401 So.2d 333 (Ala.Cr.App.1981). An examination of the record fails to show that the trial court abused its discretion here.
One claim raised under this section merits further discussion. The record discloses that on the opening day of court, and prior to the instant case being called for trial, the trial court called about twenty cases for trial, including codefendant Futral's case. The defendants in the various cases, including Futral, apparently came and stood before the bench when their cases were called. Futral was handcuffed. The jury venire was apparently sitting in the courtroom. Prior to the trial commencing in the instant case, defense counsel moved for a continuance, arguing that the presence of Futral in handcuffs before the jury venire prejudiced the right of appellant to a fair trial. The trial judge retired to his chambers, where Futral entered a plea of guilty to the charge outside the presence of the jurors. Upon returning to the courtroom, the trial judge explained to the jury what he had been doing in chambers. In the beginning, the court reporter did not record the explanation, but on request of defense counsel, recorded the latter part of it, which is in the record. The trial judge explained that he had taken a guilty plea from a "young man" who had seven cases, and that it was necessary that the young man fully understand the Habitual Felony Offender Act. He explained the Habitual Felony Offender Act to the jury, and stated that he took the plea in chambers and not before them in case the young man "backed out" of pleading guilty after the explanation. He explained that had he discussed the guilty plea in the jurors' presence, and the man had changed his mind, he could not be tried at that term of court since the jury would have heard his efforts to plead guilty. The trial judge did not identify the person he was talking about. The record shows that some "twenty odd cases" had been disposed of by pleas of guilt, Futral's being one of them. It is possible that the person whom the trial judge was talking about was not Futral. In qualifying the jury venire, the trial judge questioned the jurors as to whether any of them knew or had heard anything about the case, and there was no response. The jurors were asked on voir dire if any of them knew appellant, and only one responded that he did. The jurors were not asked if they knew Futral. After the jury had been selected to try the case, appellant renewed his motion for a continuance and also moved for a mistrial on the same grounds. The motion for a mistrial was denied. It does not appear that the motion for a continuance was ruled upon. In the *170 beginning, during qualification of the jury, the trial court announced that appellant and Futral had been indicted together, but that the only person being tried was appellant. During the prosecution's opening statement, the indictment was read to the jury, mentioning Futral, without objection, and the prosecuting attorney told the jury what he expected to prove, mentioning Futral's part in the check writing scheme. Appellant's counsel moved for a mistrial four times during the prosecution's opening statement due to the mention of codefendant Futral, and on each occasion the motion was denied.
Futral testified for the State and the record shows that the following exchange occurred during his direct testimony:
"Q. (Prosecuting Attorney): Mr. Futral, are you the same Randy Futral who this morning pled guilty to case number
"RUTH S. SULLIVAN (Defense Counsel): We move for a mistrial
"COURT: Sustain the objection. You can't impeach your own witness.
"RUTH S. SULLIVAN: I moved for a mistrial, may it please the court.
"COURT: Motion for mistrial is denied. You members of the jury, disregard that question and disregard that answer. [Although the judge said, "and disregard that answer," the record does not indicate that an answer had been given.]"
Appellant, relying upon United States v. DeLucca, 630 F.2d 294 (5th Cir.1980), contends that the jury had knowledge of Futral's guilty plea and that this prejudiced his right to a fair trial.
As a general rule, the fact that a confederate or co-conspirator of the defendant pleaded guilty, or has been found guilty, is inadmissible on the issue of the guilt of the defendant who is separately tried. United States v. DeLucca, supra; United States v. Toner, 173 F.2d 140 (3rd Cir.1949); 2 Wharton's Criminal Evidence § 439 (12th ed.1955). When a guilty plea of a codefendant is brought to the attention of the jury without any guiding instructions as to its use in their deliberations, its potential for misuse is apparent. United States v. King, 505 F.2d 602 (5th Cir.1974); United States v. Harrell, 436 F.2d 606 (5th Cir.1970). The introduction of a codefendant's guilty plea is permissible, however, when its use is limited to proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness's credibility. United States v. King, 505 F.2d at 607.
In United States v. DeLucca, 630 F.2d at 298, the Court of Appeals for the Fifth Circuit stated:
"The problem of a defendant's guilt by association arises primarily when the jury learns of a codefendant's guilty plea entered either before or during the trial proceedings. A guilty plea entered by a codefendant can be especially prejudicial if the plea is made in connection with a conspiracy to which the remaining defendants are charged. United States v. Medina-Arellano, 569 F.2d 349, 356 (5th Cir.1978). This circuit has recommended that when a jury learns of a codefendant's guilty plea, the trial judge should immediately admonish them against transferring the guilt of one to another. See, United States v. King, 505 F.2d at 607; United States v. Beasley, 519 F.2d 233, 239 (5th Cir.1975). A cautionary instruction is generally sufficient to dispel any prejudice that arises from informing the jury of a codefendant's plea of guilty. United States v. White, 589 F.2d 1283, 1290, n. 14 (5th Cir.1979). However, while a curative statement may be the preferred practice and is an important element in insuring the jury's impartiality, it is but one of the many factors to consider on review. The prevailing inquiry is one of fairness and to this end, jury instructions are important only insofar as they protect the substantive rights of the accused. United States v. King, 505 F.2d at 607.
"...
"Ordinarily, when the jury learns of a codefendant's guilt for the same or similar offenses, and the defense counsel does not request that a curative instruction be given, the failure of the trial *171 judge to give one will not require reversal. United States v. Beasley, 519 F.2d at 240. Only in those rare situations in which other `aggravating circumstances' have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error. See e.g., United States v. Harrell, 436 F.2d 606, 617 (5th Cir. 1969 [1970])."
In United States v. King, 505 F.2d at 608, the Court stated:
"Thus, a number of our casesin fact, all but onehave declined to find plain error when the fact of a coconspirator's guilty plea was made known to the jury even though no cautionary instructions were given. In assessing King's assertion of plain error in this case, then, we must carefully examine all the facts and circumstances of the case in their proper context. The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt." (Footnotes omitted.)
In the instant case, appellant complains that the trial court's action in the presence of the jury venire in reference to the taking of the codefendant's guilty plea, and the question on direct examination by the prosecuting attorney asking the codefendant if he was the same person who had previously entered a guilty plea, had the effect of impermissibly advising the jury of the codefendant's guilty plea. Appellant moved for mistrial in each instance, and the motions were denied. He argues that the denial of his motions for mistrial in this regard constituted reversible error.
It does not appear from the record that the jury was ever directly advised that Futral had entered a guilty plea. The record does not disclose that any juror knew or recognized Futral as one of the defendants entering guilty pleas. The trial judge did not give the jury the names of any persons entering guilty pleas. When the prosecuting attorney asked Futral on direct examination if he was the person that had entered a guilty plea, defense counsel immediately moved for a mistrial. The trial judge sustained an objection to the question, which was never answered by the witness, and instructed the jury to disregard it. Defense counsel did not request additional curative instructions. At no time did Futral testify that he had previously pleaded guilty to the charge. It is clear, however, that he was jointly indicted with appellant, is a codefendant in the case, and has been in confinement. Considering all the circumstances, we think it possible that the jury could reasonably have concluded that Futral had entered a plea of guilty to the indictment and was cooperating with the State by testifying against appellant.
Assuming that the jury had knowledge of the guilty plea, the question to be determined is whether that knowledge was prejudicial to appellant in this case. We think not. It is apparent that references to Futral's plea of guilty were not introduced as part of the State's case to prove the guilt of appellant. The purpose of Futral's testimony was to give the facts and circumstances of the crime. Here, Futral took the witness stand, admitted his participation in the crime, and described to the jury the leading role played by appellant in the check writing and cashing scheme. Any prejudice resulting from the actions of the trial judge in reference to the guilty plea and the question asked by the prosecuting attorney was rendered harmless when Futral's guilt was established by his own testimony, which also implicated appellant. Appellant was convicted by Futral's testimony and the other overwhelming evidence of his guilt, including his own admissions, *172 and not because the jury may have learned during the course of the trial that Futral had pleaded guilty. The trial court did not abuse its discretion when it denied the motions for mistrial predicated on the above objections. See State v. Just, 185 Conn. 339, 441 A.2d 98 (1981); State v. Riddall, 251 Or. 506, 446 P.2d 517 (1968); State v. Cole, 252 Or. 146, 448 P.2d 523 (1968).

III
Last, appellant claims that reversible error was committed when the trial judge allowed the State, over the objection of appellant, to introduce evidence of collateral check and banking transactions not charged in the indictment. He argues that this was possibly evidence of distinct and independent crimes, and therefore, not admissible under the general exclusionary rule which prohibits the introduction of such evidence where the only probative function is to show bad character, inclination, or propensity to commit the type of crime for which an accused in being tried. He cites Crow v. State, 28 Ala.App. 319, 183 So. 897 (1938), in support of his contention.
The general rule is that evidence of other or collateral crimes is not admissible as substantive evidence to establish the guilt of the accused of a particular crime, but exceptions to this rule exist. Twilley v. State, 472 So.2d 1130 (Ala.Cr.App.1985); Miller v. State, 405 So.2d 41 (Ala.Cr.App. 1981); Thompson v. State, 374 So.2d 377 (Ala.Cr.App.1978), aff'd, 374 So.2d 388 (Ala.1979); Wilkins v. State, 29 Ala.App. 349, 197 So. 75, cert. denied, 240 Ala. 52, 197 So. 81 (1940); C. Gamble, McElroy's Alabama Evidence, §§ 69.01(1)-(11) (3d ed. 1977). The general exclusionary rule referred to above does not work to exclude evidence of all prior crimes, only such as are offered to show the defendant's bad character. If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by a showing of bad character, then proof of such other act is admissible. McKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1948); Wilkins v. State, supra; McElroy's, § 69.01(1).
One well recognized exception to the general exclusionary rule is relevancy to prove intent.
In McElroy's, at § 69.01(5), we read:
"If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater the likelihood that the act in question was not done inadvertently."
Another exception is relevancy to prove plan, design, scheme, or system. Also we find in McElroy's, at § 69.01(6):
"Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope."
In the instant case, the testimony of Futral and the statement of appellant disclose a plan, design, scheme or system initiated by appellant and carried out by appellant with the aid of Futral. The ten to twelve so-called payroll checks involved were all issued and cashed within a few days, and each transaction was similar in nature. It is important to note that the checks were not bona fide payroll checks, but were falsely made to appear as payroll checks in order to entice the unsuspecting merchants into being more inclined to cash them. Although Futral testified that some of the so-called payroll checks may have been honored, the evidence just as strongly supports the conclusion that at no time *173 during the operation of this scheme were there sufficient funds in the Camp Hill bank to cover any of the checks. Appellant apparently saw to that. The bank accounts which were opened by Futral in Wetumpka and Columbus, at the instructions of appellant, were opened in the name of R.E. Futral Enterprises, an obviously ficticious entity. The record indicates that during the time the checks were being drawn on these accounts, there were never sufficient funds in the accounts to cover the checks. The Wetumpka and Columbus banking transactions were an integral part of the scheme being perpetrated. The checks drawn on the Wetumpka and Columbus banks were in furtherance of, and in aid of, the overall fraudulent scheme. It is interesting that appellant's statement, in which he is essence admits the scheme, says nothing about ever making the checks good.
Section 13A-8-2 defines the offense of theft of property. The purpose of § 13A-8-2 is to create a unified theft offense which eradicates the common law distinctions between the crimes of larceny, embezzlement, and false pretense. The offense charged in the instant case, knowingly obtaining by deception control over the property of another withi intent to deprive the owner of his property, is akin to the former crime of false pretense. See Commentary, §§ 13A-8-2 through 13A-8-5, Code of Alabama 1975. The crime of false pretense, like the present crime of theft of property by deception, required proof of an intent to defraud. It is generally admissible to show other similar criminal acts to prove this intent. Snipes v. State, 50 Ala.App. 139, 277 So.2d 413 (1973); Nix v. State, 27 Ala. App. 94, 166 So. 716 (1936); Pearce v. State, 26 Ala.App. 492, 164 So. 114, cert. denied, 231 Ala. 150, 164 So. 118 (1935); McElroy's, § 70.01(10).
This prosecution involved a charge of intentional fraud, and the guilt or innocence of appellant depended upon his intent at the time the check was given. We hold that it was not error to overrule the objections or to deny the motions for mistrial made at the time of the introduction of the evidence of the collateral check and banking transactions referred to above. Such evidence bears probatively on the intent with which the act was committed, and it is nonetheless admissible even though it might also tend to discredit appellant's character. It tended to prove the appellant's guilt "otherwise than as tending to prove guilt via bad character." Minnifield v. State, 397 So.2d 189 (Ala.Cr.App.), cert. denied, 397 So.2d 195 (Ala.1981). We hold, also, that the evidence was admissible because it shows that the specific offense charged and the collateral transactions were committed in keeping with or pursuant to, a single plan, design, scheme, or system. We have no quarrel with the decision of the court in Crow v. State, supra, upon which appellant relies. That case is factually distinguishable from the case at bar.
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.

ON REHEARING
PATTERSON, Judge.
Appellant raises three issues in his application for rehearing. First he reargues the sufficiency of the evidence to prove the elements of theft of property in the second degree by deception, and second, he reasserts his claim that the jury's knowledge of co-defendant Futral's guilty plea prejudiced his right to a fair trial. We fully addressed these issues in our original opinion and resolved them against appellant. He raises nothing new in his application, in reference to these issues, which would merit our further consideration.
In appellant's third issue, he contends that we were incorrect in holding in our original opinion that the evidence of collateral check transactions was admissible under the intent, and plan, scheme, or design exceptions to the general exclusionary rule that evidence of other unrelated crimes is inadmissible to show guilt of the crime *174 charged. He argues that the requisite intent can be inferred from the act itself, i.e., the issuance of the check and its return, marked "insufficient funds," and that, for that reason, evidence of collateral offenses is inadmissible to prove intent. He also apparently contends that the evidence of other crimes is inadmissible because his intent was not in issue at the trial. He relies on Delevie v. State, 454 So.2d 1044 (Ala.Cr.App.1984), and Brewer v. State, 440 So.2d 1155 (Ala.Cr.App.), cert. denied, Ms. 83-49 (Ala.1983).
In Wharton's Criminal Evidence § 245 at 560 (C. Torcia 13th ed. 1972), the general rule is stated as follows: "Where the requisite intent is presumed or inferred from proof of the criminal act itself or where the intent of the defendant is not in issue, evidence of other crimes is not admissible." In discussing the matter of inferring intent from the criminal act itself, it is stated in McCormick on Evidence, § 190, at 450 n.421 (E. Cleary 2d ed. 1972): "When the act charged is not equivocal, but the criminal intent is a necessary conclusion from the act, this theory of other acts as showing intent may not be availed of." In Brewer v. State, 440 So.2d 1159-60, we stated:
"A review of the foregoing authorities and the Alabama cases on this point indicates that the `intent exception' applies only if the defendant's conduct is ambiguous, i.e., wrongful if done with an improper intent but not criminal if done innocently.... [Citation omitted.]
"Thus, when the defense is an outright denial of the act, such as by setting up an alibi, intent may not usually be proved by evidence of prior crimes. As Wigmore observes, `[T]he peculiar feature of this process of proof is that the act itself is assumed to be done. ...' 2 Wigmore on Evidence § 302 at 245 (Chadbourn rev. 1979) (emphasis in original)."
We disagree with appellant's contention that intent was not in issue at the trial. It was very much at issue. Appellant's counsel raised the issue of intent in her opening statement to the jury. Although defense counsel's final summation was not transcribed in the record, it is apparent from comments by the prosecuting attorney in his final summation, which is in the record, that appellant's counsel also raised the issue of intent in final argument. Appellant's accomplice, Futral, testified that he thought appellant intended to eventually put funds in the bank to cover the checks. Ms. Voss testified that Futral told her that appellant would make the check good. Appellant's statement admits that he did not have funds in the bank to cover the checks when they were written and cashed; however, he does not say that he intended to deprive the holders of the checks of their money or that he never intended to make the checks good. The trial court's oral charge to the jury dealt at length with the element of intent. It is apparent that much of the cross-examination of the State's witnesses was designed to negate intent.
Appellant correctly cites Delevie v. State, supra, for the proposition that the issuance of a check which is returned marked "insufficient funds," constitutes prima facie evidence of intent to defraud. He argues that due to this inference of fraudulent intent, drawn from the act itself, evidence of other offenses is inadmissible for purposes of showing intent, citing Brewer v. State, supra. We do not agree. In Brewer the act charged was not equivocal, and the criminal intent was a necessary conclusion from the act (rape/murder). The instant case is clearly distinguishable from Brewer. Unlike Brewer, the act here is equivocal in nature, and hence will be unlawful or not depending upon the intent with which it was done.
Here, the question of intent, i.e., did appellant intend to deprive the check holders of their money at the time of the cashing of the checks, is equivocal and "ambiguous," even though a check returned due to insufficient funds is prima facie evidence of intent to defraud. In Delevie, this court, while recognizing that a check dishonored due to insufficient funds was prima facie evidence of fraudulent intent, held that the admission of other similar *175 check transactions was proper to prove intent. Criminal intent is not a necessary conclusion from the act alleged in the instant indictment, nor can intent be presumed from the act as alleged.
In C. Gamble, McElroy's Alabama Evidence § 70.01(10) (3rd ed. 1977), we find the following:
"The crime of false pretense has the requisite intent to defraud as its primary element. Therefore, it is generally admissible to show other similar criminal acts to prove this intent and such constitutes one of the major exceptions to the general rule that one cannot introduce prior criminal acts. For example, in a prosecution for false pretense by drawing a check upon a bank with intent to defraud and with knowledge at the time that the maker doesn't have sufficient funds to cover the check, it has been held that evidence that the accused gave worthless checks to other persons is properly admissible." (Footnote omitted.)
The evidence that appellant gave worthless checks to other persons or gave checks which were dishonored by the bank for want of sufficient funds about the time of the offense charged is admissible as tending to prove his intent to defraud. Benefield v. State, 469 So.2d 699 (Ala.Cr.App.), cert. denied, Ms. 82-540 (Ala.1985); Delevie v. State, supra; Nix v. State, 27 Ala.App. 94, 166 So. 716 (1936); Caughlan v. State, 22 Ala.App. 220, 114 So. 280 (1927).
Appellant's contention that the evidence of other check transactions showing plan, design, scheme, or system is admissible only to prove the identity of an accused, is without merit. To evidence plan, design, scheme or system, a series of prior similar acts is receivable in evidence when they have such common features in their preparation and commission as to make probable a plan to produce a result of which the act charged is a part. A person's conduct is naturally the chief circumstantial evidence of his intent, as it is also of his plan, design, scheme, or system. Here, appellant prepared ten to twelve checks in varying amounts and made them appear to be payroll checks. They in fact were not payroll checks and were not for the purpose of paying wages. Each was cashed at a business place after the defendant purchased a small amount of merchandise. All the transactions took place over a period of a few days, and they were all similar. All of the transactions, including the one charged in the indictment, were obviously a part of a fraudulent plan, design, scheme, or system, and were designed to produce a result of which the act charged is a part. The evidence of the other check transactions was also admissible to prove that the now-charged crime and the other offenses were committed in keeping with or pursuant to a single plan, design, scheme, or system.
The application for rehearing is due to be, and it is hereby, overruled.
APPLICATION FOR REHEARING OVERRULED; OPINION EXTENDED.
All Judges concur.
NOTES
[1] Section 13A-8-4, Code of Alabama 1975 provides: "(a) The theft of property which exceeds $100.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another, constitutes theft of property in the second degree. (b) Theft of property in the second degree is a Class C felony."