No. 49,396

STATE OF KANSAS, *Appellee,* v. DARREL JOSEPH GOURLEY, *Appellant.*

(578 P.2d 713)

Opinion filed May 6, 1978.

*Gwinn G. Shell,* of Garnett, argued the cause, and was on the brief for the appellant.

*Phillip M. Fromme,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of first-degree murder (K.S.A. 21-3401), aggravated burglary (K.S.A. 21-3716), and felony theft (K.S.A. 21-3701). The essential facts in the case are as follows: On the evening of September 11, 1976, Malinda Hildebrand and her husband, Eugene, returned from nearby Yates Center to their home in Burlington, Kansas. During the trip Eugene fell soundly asleep in the back seat of the family automobile. Arriving at their home around midnight, Malinda Hildebrand parked the car in the driveway and went into the house to put their fifteen-month-old baby to bed. It is unknown whether she attempted to awaken her husband before retiring for the evening; there was testimony at the trial that Eugene Hildebrand was difficult to awaken when asleep. At 3:30 a.m., Eugene Hildebrand awoke and entered the house. Several lights were on inside the house and all of the doors were unlocked. Although he noticed that his guns were missing from their rack, he assumed that his wife had taken them down to dust. When Eugene Hildebrand entered the couple's bedroom, he discovered that his wife was dead. After checking the baby, who was unharmed, he discovered blood on the sheets and called the police. A later

autopsy disclosed that Malinda Hildebrand had been strangled to death. An electric clock on the floor near the bed was stopped at 1:55 a.m. The cord was removed from the wall socket and broken in two. A laboratory analysis revealed blood and skin tissue on the cord. The victim's wedding and engagement rings had apparently been removed from her finger by her assailant. A search of the house revealed that four guns belonging to Mr. Hildebrand were missing. A car matching the description of the automobile of the defendant, Darrel Joseph Gourley, was observed parked near the Hildebrand home on the evening Mrs. Hildebrand was strangled.

On September 12, 1976, within nine hours following the murder, a state game protector employed by the Kansas Fish and Game Commission stopped the defendant and his half-brother, David T. Parker, near Garnett, Kansas. In checking a shotgun in their possession to see if it conformed with federal law concerning shell capacity, the game protector made a note of the serial number of the gun. It was later determined to be one of the guns taken from the Hildebrand home earlier that morning. The two brothers were stopped in a car matching the description of the car seen near the Hildebrand house the night before. On September 23, 1976, an Ottawa, Kansas, police officer noticed two men with a high-powered rifle in the trunk of their car. Parker and another man agreed to let the police examine the rifle. A comparison of the rifle serial number with the list at the police station later in the day revealed that the rifle was one of those guns stolen from the Hildebrand residence. After being arrested for possession of stolen property, Parker told police that he had obtained the rifle from the defendant and directed the police to a barn near Garnett, Kansas, where the defendant had hidden the guns. There, additional weapons were discovered and identified as having been taken from the Hildebrand residence on the night of the murder.

The testimony at the trial showed that the defendant Gourley had given the police three contradictory accounts as to how he had happened to come into possession of the stolen weapons. He admitted that he had been in Burlington on the night of the murder. Both David Parker and the defendant's mother told the police that the defendant had given her wedding rings similar to those taken from Mrs. Hildebrand. The defendant's mother testified that she had thrown the rings into a nearby lake. The

defendant was arrested and charged with the crimes of first-degree murder, aggravated burglary, and felony theft. An additional count of attempted rape was dismissed. Following his conviction, the defendant appealed to this court claiming trial errors.

The defendant's first point on appeal is that the trial court erred in admitting into evidence a video-tape deposition of a Missouri woman who identified the defendant as the same person who had forced his way into her home at knife point on September 21, 1976, just ten days after the strangulation of Mrs. Hildebrand. The deposition was taken at the county courthouse in Clinton, Missouri, five days prior to the trial. The witness was unavailable at the trial because of the expected birth of her child. The woman testified that upon the defendant entering her home, he inquired if she had any guns and attempted to rape her. In the attempted rape, he used a piece of electric cord around her neck to choke her. She persuaded him not to take her wedding ring. In lieu thereof, the defendant took a pair of diamond earrings and left the home. At the state's request, this video-tape deposition was admitted into evidence under the authority of K.S.A. 60-455 to prove identity and plan. Prior to the introduction of the deposition, the trial court held a hearing outside the presence of the jury to determine the admissibility of the deposition. The court viewed the video tape and followed the testimony on a certified copy of the transcript prepared by a court reporter. The trial court admitted the testimony after determining that the testimony was relevant to prove identity and plan and that its probative value outweighed its prejudicial effect. Before the viewing of the tape by the jury and again in its final instructions, the court gave an instruction that the evidence of the Missouri crime was being admitted for the sole purpose of proving, or tending to prove, the identity of Mrs. Hildebrand's assailant and to prove a plan. The defendant's objection to the admission of this deposition into evidence was overruled.

The only real issue in this case was the identity of the assailant. We have concluded that the video-tape deposition was properly admitted to prove identity under K.S.A. 60-455. In *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974), we discussed in depth the admissibility of other crimes evidence to provide identity. In syllabus 5 of the opinion we stated:

"Where a similar offense is offered for the purpose of proving *identity,* the

evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. It is not sufficient simply to show that the offenses were violations of the same or a similar statute."

We have examined the circumstances of the Missouri crime covered by the video-tape deposition and are satisfied that the evidence disclosed sufficient similarity between that crime and the crime for which the defendant was on trial, to raise a reasonable inference that the same person committed both of the offenses, and was, therefore, admissible to prove identity. In both cases, a lone assailant attacked a young woman alone in her home. In both cases, a bluish-green Ford automobile was parked a short distance away from the house of the victim. In both cases, a cord was wrapped around the victim's neck and the assailant sought or forcibly took guns and diamond jewelry. The two crimes occurred within a period of ten days. Under the circumstances we find no error in the trial court's ruling admitting into evidence the video-tape deposition to prove identity. However, we cannot agree that the Missouri crime was admissible to prove a plan directed toward the doing of the offense charged.

In *State v. Marquez,* 222 Kan. 441, 565 P.2d 245 (1977), Chief Justice Schroeder points out that it is easy to confuse the requirements underlying the plan and identity exceptions to 60-455. In the opinion he states as follows:

". . . Plan refers to an antecedent mental condition that points to the doing of the offense or offenses planned. The purpose in showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. Strictly speaking, the exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the prior offense could be said to evidence a preexisting design, plan or scheme directed toward the doing of the offense charged.

"Something more than doing similar acts is required to have probative value in showing plan, because the object is not merely to negative an innocent intent or show identical offenses, but to prove the existence of a definite project directed toward the doing of the offense charged. . . ." (pp. 446-447.)

In this regard see also M.C. Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma,* 20 Kan. L. Rev. 411 (1972); and M.C. Slough, *Other Vices, Other Crimes: Kansas Statutes Annotated Section 60-455 Revisited,* 26 Kan. L. Rev. 161, 163 (1978).

In our judgment, it was technically error for the trial court to admit the evidence of the Missouri crime to prove a plan leading to the present crime. We have concluded, however, that under the

standard of K.S.A. 60-261, the admission of the other crimes evidence to show plan did not prejudice the substantial rights of the defendant, since the evidence was clearly admissible on the issue of identity. In light of the strong circumstantial evidence of guilt presented in this case it is clear to us that the admission of the evidence of the Missouri crime to show plan as well as identity must be considered as harmless error.

The second point on the appeal concerns certain testimony of Sheriff Freeman regarding his conversation with David T. Parker, the defendant's half-brother. In his testimony at trial, the sheriff reviewed in some detail his conversation with Parker concerning Parker's possession of one of the weapons stolen from the Hildebrand residence. Parker asked the sheriff what had happened and the sheriff then testified before the jury as follows:

"Q. What did you tell him?

"A. I told him that there had been a lady murdered where these guns were stolen.

"Q. What was his response to that?

"A. His response, exact words?

"Q. Yes.

"A. I told him—he asked me what had happened, like I said, and I told him that a lady had been murdered during the process of stealing these guns and he said, 'The son-of-a-bitch done it.' I said, 'Who do you mean?' He said, 'Darrel.' I said, 'Why, you weren't present, you told me you wasn't with him.' And he says, 'I know him,' and he said, 'He done it.'

"Q. Now, were you absolutely sure that, in the course of the conversation, he was referring to his brother?

"A. Yes, sir."

This testimony went into evidence without objection from the defendant. The following day, however, the trial court on its own motion made the determination that the testimony should be excluded from the consideration of the jury. The trial court directed the jury's attention to the testimony and instructed the jury that the testimony was stricken from the record as improper and should be disregarded. The record shows that following this admonition to the jury, defense counsel neither made further objection nor moved for a mistrial.

This portion of the testimony given by Sheriff Freeman concerning his interview with Parker was obviously inadmissible since it, in effect, was simply an expression by Parker of his *opinion* that the defendant, Darrel Gourley, had murdered Mrs. Hildebrand and stolen the guns. We have concluded, however,

that the admission of the testimony was harmless error. The defendant did not object to the testimony and the trial court struck the testimony and instructed the jury to disregard it. Under all of the circumstances, and in view of the strong evidence of guilt, we have concluded that the admission of this testimony could not have affected the outcome of the trial and does not require the granting of a new trial.

The final point raised on the appeal by the defendant is that the trial court erred in failing to admonish the jury as to its conduct during separations each and every time a recess was taken. The record in the case shows clearly that immediately after the jury was sworn to try the case, the court instructed the jury as to its conduct during separations using the language required by K.S.A. 22-3420. In this initial admonition, the trial court instructed the jury that the admonition should apply during the trial of the case whenever the jury was separated. Although the trial court thereafter did not admonish the jury at every recess that was taken during the trial, the admonition was given at least once every day of the trial and on at least half of the occasions when a recess was taken. While the better practice is for the trial judge to admonish the jury or to refer to its prior admonition prior to every recess, the failure of the court to do so is not prejudicial error. This is especially so in the absence of a showing of any misconduct on the part of the jurors. (*State v. Ralls,* 213 Kan. 249, 515 P.2d 1205 [1973].)

The judgment of the district court is affirmed.

FROMME, J., not participating.