John RUPE, Petitioner,

v.

Robert HANNIGAN, et al., Respondents.

No. 89–3166–S.

United States District Court,
D. Kansas.

Jan. 14, 1992.

John (nmi) Rupe, pro se.

John K. Bork, Office of the Atty. Gen., Topeka, Kan., for respondents.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, who is an inmate at the Lansing Correctional Facility, Lansing, Kansas, was convicted by a jury of aggravated burglary and felony murder in September, 1978. In this action, petitioner challenges his conviction and claims the presumption of intent instruction given at trial unconstitutionally shifted the burden of proof for criminal intent to petitioner.

Having reviewed the record in this matter, the court makes the following findings and order.

*Factual Background*

Petitioner was convicted of aggravated burglary and felony murder stemming from an incident in which his ex-wife, Marty, was killed by a single gunshot wound to the chest and abdomen. Petitioner admitted at trial that after hours of heavy drinking he stole a rifle, a shotgun and ammunition from his parent's home; drove the fifteen to twenty miles to his ex-wife's home; wrapped his hand in his coat to avoid cutting it; broke out the basement window; went into the house; kicked in a door; threw down the shotgun and some shells; went up the stairs; and confronted his ex-wife who was on the telephone. From that point, petitioner's memory fades but he does acknowledge he heard the gun go off although he does not remember pulling the trigger.

Petitioner claimed he only intended to kill himself in front of his ex-wife. Indeed, petitioner left a note at his parent's home which could reasonably be interpreted as a suicide note.

There was testimony from others at trial which contradicted petitioner's testimony. Shortly after his arrest, petitioner admitted he had shot his ex-wife because he could no longer handle the situation. Additionally testimony indicated petitioner had told others he needed to get rid of Marty.

Finally, the victim, having been forewarned that petitioner was on his way to her home with a gun, was on the phone with a police dispatcher when petitioner entered the house. The dispatcher heard the victim say, "Oh, my god, please, please don't shoot me." The dispatcher believed the receiver was first dropped and then hung up.

On direct appeal, the Kansas Supreme Court affirmed petitioner's conviction. 226 Kan. 474, 601 P.2d 675. Petitioner then filed a post-conviction motion pursuant to K.S.A. 60–1507. For the first time, petitioner raised the issue which is now before this court. The trial court denied petitioner's motion and, on appeal, the Kansas Court of Appeals affirmed. —— Kan. App.2d ——, 798 P.2d 974. The court of appeals did not reach the merits of petitioner's claim, holding instead that petitioner should have raised the issue on direct appeal. The Kansas Supreme Court denied petition for review.

Petitioner filed this action seeking habeas relief on May 9, 1989.

*Discussion*

■ As a preliminary matter, respondents could have raised, as a procedural default, petitioner's failure to address on direct appeal the issue now before this court. Since respondents did not, "we will deem the defense waived and will proceed to consider the petition on the merits." *Bailey v. Cowley*, 914 F.2d 1438, 1439 (10th Cir.1990).

■ The instruction that petitioner challenges read:

There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by evidence that the contrary is true.

This instruction has been held unconstitutional because it "shifted the burden of proving intent to the accused, resulting in a denial of due process." *Myrick v. Maschner*, 799 F.2d 642, 645 (10th Cir.1986) (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).

Although this instruction is unconstitutional, reversal is not automatic. In *Rose v. Clark*, 478 U.S. 570, 579–582, 106 S.Ct. 3101, 3106–3108, 92 L.Ed.2d 460 (1986), the Court held the giving of the impermissible instruction may be harmless error. "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

There are two situations where harmless error analysis has been deemed appropriate when the instruction has been given: "where the evidence of the defendant's intent has been overwhelming or where intent was not an issue at trial." *Hall v. Kelso*, 892 F.2d 1541, 1546 (11th Cir.1990). See also *Davis v. Kemp*, 752 F.2d 1515, 1521, n. 10 (11th Cir.) (en banc) cert. denied 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985).

In this case, intent was clearly an issue at trial. Petitioner claimed he was insane at the time of the crime and could not have formed the requisite intent to kill his ex-wife. In addition there was considerable testimony concerning petitioner's chronic alcohol problems including testimony about black-out spells. The second prong of the harmless error analysis is, therefore, not available. Analysis of the first prong, overwhelming evidence of intent, is more fruitful.

■ As an initial matter, petitioner has misstated the intent which must be proved. Petitioner was convicted of felony murder rather than premeditated murder. There-

fore, the intent which must have been proved was the intent to commit the underlying felony of aggravated burglary, not the intent to kill. Once the underlying felony is proved, the intent to kill is transferred by implication of law. See generally 40 Am.Jur.2d, Homicide § 71, 72 p. 363–66. An individual must possess the requisite criminal intent to commit the underlying felony to be convicted of felony murder. *Hall*, at 1544, n. 3.

The jury was instructed on the charge of aggravated burglary that "to establish this charge, each of the following claims must be proved:

1. That the defendant knowingly and wilfully entered the home of Martha Locke, 1511 Elizabeth;

2. That the defendant did so without authority;

3. That the defendant had the intent to commit Aggravated Assault, a felony, therein;

4. That at the time there was a human being in the home of Martha Locke, 1511 Elizabeth; and

5. That this act occurred on or about the 3rd day of February, 1978 in Johnson County, Kansas.

6. To have intended to commit the crime of aggravated assault the defendant must have

   a. Threatened or intended to threaten to do bodily harm to Martha Locke,

   b. Had the apparent ability to cause bodily harm,

   c. The defendant's conduct must have resulted in Martha Locke's being in immediate apprehension of bodily harm,

   d. The defendant used or intended to use a deadly weapon,

   e. That this act must have occurred on or about the third day of February, 1978, in Johnson County, Kansas, and

   f. No bodily contact is necessary

Under the harmless error analysis there must be overwhelming evidence that petitioner intended to commit the crime of aggravated burglary. The uncontroverted evidence showed that petitioner knowingly entered the home of his ex-wife without her permission by breaking the basement window and kicking in the door to the living quarters. The evidence also showed that petitioner's ex-wife and her children were in the home at the time of petitioner's entry. Although petitioner testified that he only entered the home in order to kill himself in front of his ex-wife, there is considerable evidence which shows he intended to commit aggravated assault when he entered the home. Petitioner's conduct in breaking out the window at 4:00 a.m., but protecting his hand so he would not cut it, raises questions about his desire to kill himself. Petitioner noisily kicked in a door, threw a shotgun on the floor and scattered shells everywhere. Such behavior clearly is threatening. Petitioner had a rifle in his hands which obviously gave him the ability to cause bodily harm. And Marty's statement on the phone when she saw petitioner with the gun clearly supports a finding that she was in immediate apprehension of bodily harm. Petitioner told police officers that when Marty would not talk to him, he shot her. There was clear evidence a deadly weapon was involved.

It is a well-accepted rule of law that juries are free to infer intent from conduct. *Rose*, 478 U.S. at 581, 106 S.Ct. at 3107. Although petitioner testified that he only intended to kill himself in front of his wife, the evidence deduced from his conduct and the statements of others at trial is overwhelming that petitioner had the requisite intent to commit aggravated burglary. From this evidence it is clear beyond a reasonable doubt that a rational jury would have found it unnecessary to rely on the erroneous instruction. Even absent the erroneous charge on intent, no rational jury would have drawn any other inferences from petitioner's conduct and the additional overwhelming evidence of the events. This leads the court to the inescapable conclusion that the *Sandstrom* violation was harmless error.

IT IS THEREFORE BY THE COURT ORDERED the petition for writ of habeas corpus is denied. The clerk of the court is

directed to transmit copies of this order to the petitioner and respondent.