Darrel Joseph GOURLEY, Petitioner,

v.

**David McKUNE and the Attorney General of Kansas, Respondents.**

No. 95–3481–DES.

United States District Court, D. Kansas.

March 30, 1999.

Darrel Joseph Gourley, Lansing, KS, pro se.

Jared S. Maag, Office of Attorney General, Topeka, KS, for respondents.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of life for first degree murder, fifteen years to life for aggravated burglary, and nine years to life for felony theft

following his 1977 convictions in the Coffey County District Court.[1]

Respondents have filed an Answer and Return (Doc. 8), and petitioner filed a traverse (Doc. 11). Having examined the record, the court enters the following findings and order.

## Factual Background

Malinda Hildebrand of Burlington, Kansas, was murdered in the early morning of September 12, 1976, in her home. After she and her husband and their fifteen-month-old baby returned home at approximately midnight, Mrs. Hildebrand entered the house while her husband slept in the back of the family car. When Mr. Hildebrand entered the home at around 3:30 a.m., he found all the lights on and the doors unlocked. Mr. Hildebrand noticed several guns were missing from the gun-rack, and when he entered the master bedroom, he found his wife's body. The baby was unharmed.

An autopsy showed that Mrs. Hildebrand had been strangled. An electric clock near the bed had stopped at 1:55, and the cord was broken and marked with blood and skin tissue. Mrs. Hildebrand's wedding and engagement rings were missing.

A car matching the description of petitioner's car was seen parked near the Hildebrand residence on the evening of Mrs. Hildebrand's murder. On September 12, 1976, a Kansas game protector stopped petitioner and his half-brother, Timothy Parker, near Garnett, Kansas. While examining a shotgun in their possession, he noted the serial number of the weapon; it was later matched to one of the guns stolen from the Hildebrand home. The car in which the brothers were stopped matched the description of the car seen near the Hildebrand home.

On September 23, 1976, a police officer in Ottawa, Kansas, stopped two men with a rifle in their car. One of the men was Parker, petitioner's half-brother, and the serial number of the rifle matched one of the guns stolen from the Hildebrand residence. After his arrest for the possession of stolen property, Parker told police he had received the rifle from petitioner and gave police directions to a barn near Garnett, Kansas, where police recovered additional guns taken from the Hildebrand home.

During petitioner's trial, the evidence showed petitioner had given police three contradictory explanations of his possession of the weapons from the Hildebrand residence. He admitted that he was in Burlington on the night Mrs. Hildebrand was murdered. Parker and petitioner's mother told police that petitioner had given her rings similar to those taken from Mrs. Hildebrand. Petitioner's mother testified at trial that she threw the rings into a lake because she did not know where they had come from and because her husband "didn't want stolen property in the house." (Trial Trans., pp. 488–492).

At trial, the prosecution also introduced a videotaped deposition of testimony by a Missouri woman, Peggy Ward, who identified petitioner as the person who entered her rural home armed with a knife ten days after the Hildebrand murder. The testimony was taken approximately five days before trial; Ms. Ward was unable to travel to the trial proceedings due to her advanced pregnancy. She testified petitioner entered her home with a knife, asked if she had any firearms, and attempted to rape her while choking her with an electrical cord. Ms. Ward was

---

1. A prior action for habeas corpus relief brought by petitioner was dismissed by this court. *Gourley v. Cline,* Case No. 90–3565, 1992 WL 199108 (D.Kan.) Petitioner filed an appeal from that decision, and the United States Court of Appeals for the Tenth Circuit remanded the matter for consideration of whether petitioner had exhausted all his claims. *Gourley v. Cline,* 986 F.2d 1427, 1993 WL 18614 (10th Cir.1993). After giving petitioner the option of dismissal or leave to amend his petition to exclude the unexhausted claim, this court dismissed the action without prejudice.

able to escape and persuaded the assailant to take diamond earrings instead of her wedding ring.

Petitioner was convicted by a jury, and the convictions were affirmed on direct appeal by the Kansas Supreme Court. *State v. Gourley*, 224 Kan. 167, 578 P.2d 713 (1978).

### Discussion

Petitioner seeks habeas corpus relief alleging the instructions given at trial were improper; the prosecutor made improper statements during voir dire, opening argument, and during closing argument; the warrant was jurisdictionally defective; the trial court improperly permitted the use of videotaped testimony and denied petitioner the right to confrontation; the trial court erred in admitting hearsay testimony; the trial court improperly denied a change of venue; the trial court failed to sequester potential jurors during voir dire; and defense counsel provided ineffective assistance.

### Challenge to jury instructions

■ Petitioner's challenge to jury instructions encompasses three claims. First, he attacks Jury Instruction No. 3, which was read at trial as follows:

The defendant is charged in Count I with the crime of murder in the first degree. The defendant pleads not guilty.

To establish this charge each of the following claims must be proved: One, that the defendant killed Malinda Sue Hildebrand; two, that such killing was done while in the commission of the crime of aggravated burglary, a felony, and/or the crime of theft-and that would be felony theft—and three, that this act occurred on or about the 12th day— pardon me, I will take this back and I think the instruction, paragraph two may read as it is. Three, that this act occurred on or about the 12th day of September, 1976, in Coffey County, Kansas.

Petitioner contends this instruction did not properly advise the jury of the elements of the crime charged as it did not require a finding that petitioner acted maliciously.

Petitioner next claims the court permitted improper comment on his failure to testify by giving Jury Instruction # 6, which states as follows:

You should not consider the fact that the defendant did not testify in arriving at your verdict.

Finally, petitioner challenges the use of Jury Instruction # 7, which states:

There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true.

■ To obtain habeas corpus relief, petitioner must show that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The habeas corpus jurisdiction of the federal courts does not empower them to correct errors of state law. *See Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 378, 142 L.Ed.2d 312 (1998).

■ Accordingly, claims of error in jury instructions in state criminal proceedings are not a basis for relief in habeas corpus unless the instructions were so fundamentally unfair that they denied petitioner a fair trial. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir.1999) (citations omitted). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Finally, " '[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.' " *Maes v. Thomas*, 46

F.3d 979, 984 (10th Cir.), *cert. denied,* 514 U.S. 1115, 115 S.Ct. 1972, 131 L.Ed.2d 861 (1995) (quoting *Henderson,* 431 U.S. at 155, 97 S.Ct. 1730).

Examining petitioner's allegations in light of these standards, the court first finds Instruction # 3 adequately advised the jury of the elements of first degree murder under the felony murder rule contained in K.S.A. 21–3401.

■ The court likewise finds that Jury Instruction # 6, the brief cautionary instruction to the jury regarding defendant's failure to testify, did not result in fundamental unfairness to petitioner. Respondent aptly notes the Supreme Court's comment on such instructions in *Lakeside v. Oregon,* 435 U.S. 333, 340, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978):

> ... it does not follow that the cautionary instruction ... violates the privilege against compulsory self-incrimination. The very purpose of a jury charge is to flag the juror's attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof.

■ Finally, the court considers petitioner's claim that Jury Instruction # 7 improperly shifted the burden of proof from the state. Jury instructions recognizing a presumption that person intends the probable consequences of his voluntary acts violate due process in cases where intent is an element by relieving the state of its burden of proving beyond a reasonable doubt every element of a crime. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Challenges to such instructions are subject to the harmless error analysis of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Rose v. Clark,* 478 U.S. 570, 580–82, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The court's inquiry therefore is "whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption." *Connecticut v. John-*

*son,* 460 U.S. 73, 97 n. 5, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983).

In *Rupe v. Hannigan,* 780 F.Supp. 1357 (D.Kan.), *aff'd,* 976 F.2d 740 (10th Cir. 1992), the court noted that there are at least two situations in which the harmless error analysis has been applied to deny relief, namely, "where the evidence of the defendant's intent has been overwhelming or where intent was not an issue at trial." *Id.* at 1358 (quoting *Hall v. Kelso,* 892 F.2d 1541, 1546 (11th Cir.1990)).

Because petitioner was charged with felony murder, the proof of intent necessary at trial was the intent to commit the underlying felonies of aggravated robbery and aggravated burglary. Having examined the record, the court is convinced that the evidence of intent was overwhelming, as the intruder entered the home of the victim in the early morning hours and took weapons and her wedding rings, property which was clearly linked to his possession by testimony at trial. As noted by the Kansas Supreme Court, "the only real issue in this case was the identity of the assailant." 578 P.2d at 716. Under these circumstances, the use of Jury Instruction # 7 was harmless error.

### Prosecutorial misconduct

Petitioner next challenges several aspects of the trial conduct of the prosecutor, claiming his remarks during voir dire, opening argument, trial, and closing argument violated his constitutional rights.

■ Habeas corpus relief is available to remedy prosecutorial misconduct only when the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). To decide this issue, the court looks to "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks,* 143 F.3d 1313, 1322 (10th Cir.1998). The analysis includes an evaluation of the strength of the evidence against petitioner, whether

any curative instructions by the trial court mitigated the impact of any impermissible statements, and the probable effect of any improper remarks on the jury. *Hopkinson v. Shillinger,* 866 F.2d 1185, 1210 (10th Cir.1989) (citations omitted), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990).

The specific conduct challenged by petitioner includes the prosecutor's use of a hypothetical scenario during jury selection to question some potential jurors on their response to circumstantial evidence, a remark during opening argument that suggested the prosecutor personally believed petitioner to be guilty, and statements in his closing statement that no evidence was offered to refute testimony regarding petitioner's sanity, that the prosecutor believed petitioner entered the Hildebrand residence with the intention of perpetrating a sexual assault, that the testimony of a witness that he had been threatened by police officers during an interview was contrary to the prosecutor's knowledge of police officers, and that he personally believed petitioner stole weapons from the Hildebrand residence. Petitioner also alleges the prosecutor made a number of factual errors during trial and that he improperly told the jury petitioner was in a Missouri jail when he was interviewed by the Kansas Bureau of Investigation.

■ Petitioner's assignments of error, when viewed in light of the record of his entire trial, do not persuade the court that prosecutorial misconduct so tainted the proceedings as to deny due process. While the insertion of personal opinion by the prosecutor was inappropriate, the jury was advised by the prosecutor himself during his opening statement and by the judge prior to closing argument that the statements offered by counsel were not evidence. (Tr. pp. 190, 576). The evidence against petitioner was significant, as it placed petitioner in the vicinity of the crime on the night of the murder, placed him in possession with property stolen from the Hildebrand home, and identified

him as the perpetrator of a similar crime committed elsewhere within a few days. Given the brief nature of the prosecutor's remarks in the trial as a whole and the strength of the evidence against petitioner, the court finds no denial of due process.

### Defective warrant

■ Petitioner challenges his conviction on the ground the warrant was defective because it failed to identify the degree of murder charged. When such a challenge is presented in a habeas corpus action, the court determines only "whether it is so fatally defective as to deprive the court of jurisdiction." *Maxwell v. Hudspeth,* 175 F.2d 318, 319 (10th Cir.) (fn. omitted), *cert. denied,* 338 U.S. 834, 70 S.Ct. 39, 94 L.Ed. 509 (1949).

■ The record shows that Count I of the criminal information filed against petitioner charged him with murder in the following language:

... on the 12th day of September, A.D. 1976, in said County of Coffey and State of Kansas, one Darrel Joseph Gourley did then and there unlawfully, feloniously kill and murder a certain human being, to-wit, Malinda Sue Hildebrand, by strangulation with an electrical cord while in the perpetration or attempt to perpetrate the crime of theft (K.S.A.21–3701) and aggravated burglary (K.S.A.21–3716) in violation of the laws of the State of Kansas and more particularly K.S.A. 21–3401 Penalty Section K.S.A. 21–451(a). (Coffey County court record, p. 19.)

A reasonable reading of this document shows petitioner received constitutionally adequate notice of the nature of the charge against him and of the facts alleged by the state to support the charge. Petitioner was not denied due process by the charging document.

### Right to confrontation

■ Petitioner contends the trial court erred in permitting the state to introduce the videotaped testimony of Peggy Ward,

the Missouri woman who identified petitioner as her assailant in a crime similar to that committed in the Hildebrand residence.

On direct appeal, the Kansas Supreme Court found it was error to submit this deposition to show a plan but concluded the videotaped deposition was proper to show identity pursuant to state law. *State v. Gourley*, 224 Kan. 167, 578 P.2d 713, 716 (1978). This court reviews the use of the videotaped deposition only for constitutional error.

The Confrontation Clause does not guarantee criminal defendants an absolute right to face-to-face contact with a witness at trial. *Maryland v. Craig*, 497 U.S. 836, 844, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Instead, the Supreme Court has recognized exceptions and has "repeatedly held that the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Id.* at 847–48, 110 S.Ct. 3157. The *Craig* decision establishes that a defendant's right to confrontation is protected when the denial of a face-to-face meeting furthers an important public policy and when the reliability of the testimony can be safeguarded. *Id.* at 849, 110 S.Ct. 3157.

Here, the trial court found Ms. Ward was unavailable at trial due to her physical condition, and petitioner does not contest this decision. In the videotaped deposition, Ms. Ward testified under oath and in the presence of counsel and the petitioner, and she was subject to cross-examination. The jury had an opportunity to observe her demeanor on tape. The court finds no constitutional violation in these circumstances.

**Hearsay testimony**

During petitioner's trial, the prosecution called Sheriff Earl Freeman of Coffey County, who testified about his investigation of the crime. During this testimony, Sheriff Freeman related a statement made by petitioner's half-brother, Timothy Parker, during an interview conducted after Parker was found in possession of one of the guns stolen from the Hildebrand residence. Parker reported during the interview that he had obtained the gun from his half-brother, the petitioner.

The portion of testimony relevant to petitioner's claim reads as follows:

[prosecutor to Sheriff Freeman]: Q. Did Mr. Parker ask you any questions?

A. Yes, he did.

Q. Would you tell us what questions he asked you during this investigation?

A. Yes, he asked me if there was other guns that was missing, also, and he described the other three guns that was also missing and he also asked me what, if anything, had happened during the course of these guns being missing.

Q. So, what did you do, proceed to tell him?

A. Yes, sir.

Q. What did you tell him?

A. I told him that there had been a lady murdered where these guns were stolen.

Q. What was his response to that?

A. His response, exact words?

Q. Yes.

A. I told him—he asked me what had happened, like I said, and I told him that a lady had been murdered during the process of stealing these guns and he said, "The son-of-a-bitch done it." I said, "Who do you mean?" He said, "Darrel." I said, "Why, you weren't present, you told me you wasn't with him." And he says, "I know him," and he said he done it. (Tr. pp. 439–440.)

The trial judge initially permitted this testimony but on the following day, he advised the jury of his decision to strike the testimony and directed them to disregard it. (Tr. pp. 451–453.) The Kansas Supreme Court ruled that although the testimony was inadmissible, its admission

was harmless error, noting the trial court struck the testimony and instructed the jury to ignore it, and given the strong evidence of petitioner's guilt.

The scope of review on habeas corpus permits the court to review due process challenges to state evidentiary rulings only for fundamental unfairness. *See Matthews v. Price,* 83 F.3d 328, 331 (10th Cir.1996). Having considered the record as a whole, the court concludes petitioner was not denied due process. The trial court carefully explained to jury why opinion evidence was not permissible and instructed the jury to disregard the evidence. The remaining evidence against petitioner in this case was substantial, and the court finds no grounds for relief.

## Motion for change of venue

■■■ The trial court denied defense counsel's motions for a change of venue. Petitioner challenges this decision, alleging there was significant prejudice against him in the area. He notes his trial counsel was the fourth attorney appointed to represent him and that he was housed in other counties during his pretrial confinement as a security measure.

■■■ Due to the limited scope of habeas corpus review of a state court's finding, a habeas corpus applicant who seeks relief based on the denial of change of venue must show either actual prejudice or that there is a presumption of prejudice because the proceedings involved "such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas,* 381 U.S. 532, 542–43, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

The limited nature of habeas review in this area is based, in part, on the unique position of the trial court in assessing the demeanor of jurors as evidence of sentiment in the community at large. *See Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (trial court's decision on demeanor entitled to "special deference"); *Church v. Sullivan,* 942 F.2d

1501, 1519 (10th Cir.1991) (citing trial court's ability to observe jurors).

Petitioner has not made a sufficient showing of prejudice, as he alleges only broadly that the community was hostile towards him. While it seems undeniable that nearly everyone in the small community was aware of the crime, "[i]t is not required ... that the jurors be totally ignorant of the facts and issues involved." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The record shows the trial court conducted a thorough voir dire, and the court finds no reason to disturb its ruling denying a change of venue.

## Failure to conduct individual voir dire

■■■ Petitioner alleges the trial court erred in failing to conduct individual voir dire and that he suffered prejudice when potential jurors heard the following remarks during the voir dire of a prospective juror:

Q. Mrs. Stephenson, have you ever formed or expressed any opinion about this case?

A. Well, I will have to be honest, I will have to—I have often said that he is guilty, he should be hung, and that is the way I feel.

Q. Do you feel at this time that the defendant is guilty?

A. Not necessarily guilty, I don't know how I feel.

Q. Do you feel completely fair and impartial at this moment?

A. Yeah, I think so.

Q. The mere fact that Darrel Gourley sits here charged with the crime doesn't necessarily mean that he is guilty?

A. No. (Tr. p. 177.)

■■■ It is settled in this Circuit that to establish a constitutional violation for failure to conduct an individual voir dire, the petitioner must meet the standard of *Estes v. Texas* by showing that the trial either resulted in actual prejudice or involved " 'such a probability that prejudice

will result that it is deemed inherently lacking in due process.'" *Lucero v. Kerby,* 133 F.3d 1299, 1308 (10th Cir.) (quoting *Estes,* 381 U.S. at 542–43, 85 S.Ct. 1628), *cert. denied,* —— U.S. ——, 118 S.Ct. 1684, 140 L.Ed.2d 821 (1998). The trial court has broad latitude in conducting voir dire and is afforded considerable deference. *See Mu'Min v. Virginia,* 500 U.S. 415, 423, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

Petitioner has not made a showing sufficient to meet these standards. Although the potential juror quoted above vehemently stated a personal opinion, there is no showing that her comments influenced other potential jurors to such an extent that they were unable or unsuitable to function as jurors. Petitioner is not entitled to relief on this claim.

**Ineffective assistance of counsel**

Petitioner challenges the constitutional adequacy of his trial counsel's performance and raises a number of specific complaints, including counsel's failure to object to the three jury instructions discussed elsewhere in this action, to the warrant, to the videotaped deposition; to properly conduct direct and cross-examination of witnesses; to seek a change of venue; to challenge the trial court's voir dire procedures; to conduct a pretrial investigation of the murder scene; to object to references to petitioner's criminal history; and to preserve issues for appeal.

To obtain relief on this claim, petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that absent the errors of counsel, the outcome of the trial would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a presumption that counsel provided reasonable professional representation, and the court must endeavor to avoid the distortions of hindsight and to be mindful

that there are "countless ways to provide effective assistance of counsel." *Id.* at 689, 104 S.Ct. 2052. Finally, the court should "reconstruct the circumstances of counsel's challenged conduct, and ... evaluate the conduct from counsel's perspective at the time." *Id.*

After studying the trial transcript and the pleadings filed in this matter, the court is not persuaded petitioner is entitled to relief. Many of the errors identified in petitioner's allegations, such as counsel's failure to object to jury instructions, to challenge the warrant charging petitioner with murder, and to challenge the trial court's method of conducting voir dire are undermined by this court's determinations that no constitutional violations occurred. Others, such as his claim that counsel erred by failing to conduct a pretrial investigation of the crime scene, fail to explain how petitioner believes such a decision might have altered the jury's verdict. In some instances, such as the claim that counsel failed to seek a change of venue, petitioner's claim is simply inaccurate.[2]

The trial transcript reflects that petitioner's counsel actively pursued the interests of his client throughout trial and on appeal. While no defendant receives a procedurally perfect trial, the court concludes counsel dutifully defended petitioner against the considerable evidence which linked him to the murder of Mrs. Hildebrand. The court rejects petitioner's challenge to defense counsel's performance.

**Failure to hold evidentiary hearing**

Petitioner's final claim for relief is that the trial court failed to conduct an evidentiary hearing on his motion filed pursuant to K.S.A. 60–1507. The court construes this to challenge the nature of the proceeding conducted by the trial court on February 22, 1994, following remand. The transcript reflects that the trial court heard argument from petitioner's appointed

---

**2.** The trial record shows counsel made such a motion and renewed it at the beginning of

trial proceedings. Tr. pp. 5–6.

**1168**

counsel and the county attorney and then issued a written decision without receiving evidence.

 As this court already has noted, federal habeas corpus relief extends under 28 U.S.C. § 2254(a) to those who demonstrate they are in custody "in violation of the Constitution or laws or treaties of the United States." This authority does not empower the federal court to correct errors of state law or to disturb discretionary decisions of the state courts. The court notes that under state law, the trial court need not conduct an evidentiary hearing where it finds no factual basis for postconviction relief appears in the record. *Poore v. State,* 5 Kan.App.2d 210, 613 P.2d 963 (1980).

The court finds no constitutional ground is presented by this claim and concludes that habeas corpus relief is not available.

IT IS THEREFORE ORDERED the petition for habeas corpus is denied.

**IT IS SO ORDERED.**